Citation Nr: 1504686 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 09-07 331 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for a back disorder as secondary to service-connected osteoarthritis, residuals of right knee injury, status post total knee replacement, and service-connected degenerative arthritis, left knee, status post left knee replacement. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J.N. Moats, Counsel



INTRODUCTION

The Veteran served on active duty from October 1943 to November 1945. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

The case was remanded by the Board in August 2010 for further development. Thereafter, in a June 2012 decision, the Board denied the Veteran's claim of service connection for a back disorder, to include as secondary to his service-connected bilateral knee disabilities, and his claim for an increased rating for his right knee disability. The Veteran appealed the portion of the June 2012 decision that denied service connection for a back disorder to the United States Court of Appeals for Veterans Claims (Court). As such, the June 2012 Board decision is final as to the denial of an increased rating for the Veteran's right knee disability. In December 2013, the Court issued a Memorandum Decision in which the Board's denial of the claim of service connection for a back disorder was vacated and remanded to the Board for further appellate review. 

In July 2014, the Board remanded the case for development consistent with the Memorandum Decision. At that time, the Board observed that, as noted by the Court in its December 2013 Memorandum Decision, as the Veteran did not contest the Board's June 2012 conclusions that his back condition did not manifest during, or as a result, of his military service, he has abandoned any argument with respect to the Board's findings as to direct and presumptive service connection. Accordingly, this decision will only address whether the Veteran has a back disorder that is secondary to his service-connected disabilities and, as such, the issue has been characterized as shown on the title page of this decision.

As a final preliminary matter, the Board notes that this claim was processed using the paperless, electronic Virtual VA and Veteran Benefits Management System (VBMS) claims processing systems. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

A back disorder is not proximately due to or aggravated by the Veteran's service-connected osteoarthritis, residuals of right knee injury, status post total knee replacement, and/or his service-connected degenerative arthritis, left knee, status post left knee replacement.


CONCLUSION OF LAW

The criteria for service connection for a back disorder as secondary to the Veteran's service-connected osteoarthritis, residuals of right knee injury, status post total knee replacement, and service-connected degenerative arthritis, left knee, status post left knee replacement have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

VA's Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on the claim for VA benefits. 

Here, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, a November 2007 letter sent prior to the initial unfavorable decision issued in April 2008, and a September 2010 letter advised the Veteran of the evidence and information necessary to substantiate his service connection claim, to include on a secondary basis, as well as his and VA's respective responsibilities in obtaining such evidence and information. Moreover, such letters advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. 

While the September 2010 letter was issued after the initial April 2008 rating decision, the United States Court of Appeals for the Federal Circuit has held that VA could cure such a timing problem by readjudicating the Veteran's claim following a compliant VCAA notification letter. Mayfield v. Nicholson, 444 F. 3d 1328, 1333-34 (Fed. Cir. 2006). The Court clarified that the issuance of a statement of the case could constitute a readjudication of the Veteran's claim. See Prickett v. Nicholson, 20 Vet. App. 370 (2006). In the instant case, after the September 2010 letter was issued, the Veteran's claim was readjudicated in April 2012 and November 2014 supplemental statements of the case. Therefore, any defect with respect to the timing of the VCAA notice has been cured. Accordingly, no further development is required with respect to the duty to notify.

Next, VA has a duty to assist the Veteran in the development of a claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. 
§ 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The record contains the Veteran's service treatment records, post-service reports of VA and private treatment, and VA examination reports. Moreover, the Veteran's statements in support of the claim are of record. The Board has carefully reviewed such statements and concludes no available outstanding evidence has been identified. The Board has also perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. 

Additionally, the Veteran was afforded VA examinations in March 2008 and March 2012 with addendum opinions in October 2010 and August 2014 that provided an etiological opinion with rationale. The Board finds that the VA examinations with opinions are adequate because, as discussed below, they were based upon consideration of the Veteran's pertinent medical history, to include his lay assertions and current complaints, and provide detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). Moreover, the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and opinion regarding the issue on appeal has been met. 

Finally, the Board finds that there was substantial compliance with the prior Board remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999). 

In compliance with the August 2010 remand directives, the record shows that the AOJ provided the Veteran with additional VCAA notice regarding substantiating his claim on a secondary basis, informed him of the inability to obtain records from Dr. Giraldo, and requested that he provide VA with a Form 21-4142 for each health care provider, to include from Orthopaedic Surgery Associates, Inc., he had visited in in the September 2010 letter. The AOJ also obtained updated VA treatment records and was afforded a VA examination in March 2012 as directed. Moreover, in July 2014, the Board remanded the case for an additional addendum opinion, which was accomplished in August 2014. Accordingly, the Board finds that there has been substantial compliance with the prior Board remand directives and, therefore, no further remand is necessary. See Stegall, supra; D'Aries, 22 Vet. App. at 104 (2008).

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Analysis

The Board initially notes that, in the June 2012 decision, the Board determined that the preponderance of the evidence of record was against finding that the Veteran's back disability manifested during, or as a result of, his active military service given the lack of any evidence of back problems in service or for many years after. In a January 2015 brief, the Veteran's representative appears to again indicate a direct relationship to service by indicating that, although the Veteran had played golf, it was with a handicap and this fact did not discount the back symptoms he had experienced in-service or post-service. However, as determined by the Court in the December 2013 Memorandum Decision, the Veteran did not contest the Board's conclusions that the back condition did not manifest during, or as a result, of his military service. Accordingly, the Court found that he abandoned any argument with respect to the Board's findings as to direct and presumptive service connection. Rather, the Court vacated the Board's decision based on inadequate reasons and bases regarding whether secondary service connection is warranted. Therefore, the instant decision addresses only secondary service connection.

In this regard, the Veteran asserts that his back disorder is related to his service-connected bilateral knee disabilities. Specifically, he has claimed that his current back disability manifested as a result of an impaired gait due to such service-connected bilateral knee disabilities. The Board notes that the record reflects that the Veteran is presently service-connected for osteoarthritis, residuals of right knee injury, status post total knee replacement, and degenerative arthritis, left knee, status post left knee replacement.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection may also be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown , 7 Vet. App. 439, 448 (1995) (en banc). Further, service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

By way of background, the Veteran's service treatment records do not reflect any treatment or symptomatology of the spine. According to the November 1945 discharge examination, there were no abnormalities of the musculoskeletal system. The Veteran was also afforded an examination in November 1946. This examination report also does not reflect any complaints or symptomatology associated with the spine. 

The first post-service evidence reflecting spinal symptomatology is a May 1996 VA examination report. According to the report, the Veteran underwent a spinal decompression about 12 years earlier because of neck pain. The etiological origin of this condition was not indicated. He was noted to have no more problems with his cervical spine. The record also contains a VA examination from September 1997. This examination reflects that the Veteran played golf two to three times per week and that aside from his right elbow, he had no other complaints. The Veteran also denied any back pain during VA outpatient treatment in July 2001. 

According to an April 2004 letter authored by a private physician, R.B.Z., the Veteran underwent a total right knee arthroplasty in May 2003. The Veteran reported in a May 2004 statement that Dr. Z told him that he needed the left knee replaced as well, but he was waiting to recover from his right knee surgery before undergoing this procedure. Dr. Z confirmed in an August 2004 statement that the Veteran had been suffering from bilateral knee pain since March 2003 and that he may need a left knee total arthroplasty in the future as well. A July 2006 VA examination report notes that the Veteran was scheduled for a left knee total arthroplasty the following month. Nonetheless, at this time, the Veteran's gait was determined to be normal and there was no evidence of abnormal weight bearing. 

The record also contains a private bone density scan performed in July 2006. The scan reflected a normal T score of the spine and a Z score that was above average. However, it was noted that the machine interprets arthritis as extra bone, and for this reason, the scores were "a little optimistic." A September 2006 private note prepared by Dr. Z notes that the Veteran had a decreased gait with the use of a cane and the presence of an antalgic gait pattern. 

The Veteran underwent a private evaluation in May 2007. It was noted that the Veteran was experiencing buttock and right groin pain for about the last week that began insidiously. The Veteran ambulated without a noticeable limp and was capable of climbing on the examination table independently. There was stiffness noted to the lumbar spine with all excursions of motion without complaints of pain. A diagnosis of probable lumbar spondylosis was assigned. December 2007 X-rays of the lumbar spine revealed age appropriate degenerative changes at multiple levels with spondylosis and degenerative disc disease. He was diagnosed with lumbar stenosis with left leg radiculopathy. A December 2007 magnetic resonance image (MRI) confirmed disc desiccation with narrowing of the central spinal canal and the neural foramina. Transforaminal steroid injections were given in January 2008. 

The Veteran was afforded a VA examination of the spine in March 2008. He was noted to have mild constant daily pain. Examination revealed a normal gait and posture. The examiner diagnosed the Veteran with degenerative disc disease and joint disease of the lumbar spine, multilevel, with radiculopathy. The examiner opined that this condition was not caused by or a result of the Veteran's bilateral knee prosthesis due to degenerative arthritis. The examiner explained that degenerative joint disease of the knees or uneven gait did not lead to degenerative disc and joint disease of the lumbar spine per review of the available medical literature. Rather, degenerative joint and disc disease were caused by every day wear and tear. In the elderly, desiccation led to osteophytes which cause nerve root or spinal cord compression. 

The record also contains a private electromyograph (EMG) performed in December 2008. This revealed a mild left chronic L3-4 radiculopathy and a very mild distal sensory motor peripheral neuropathy, likely of clinical unimportance. The Veteran was noted to have gait deviation, which was a likely combination of his radiculopathy, his status post-surgical replacement of the knees and poor gait habits. The physician did not suggest that the Veteran's gait disturbance arising from his knees was a cause or contributing factor of his current back disability. The record also contains a note authored by a private physician with the initials J.P.G. dated August 2009. This note indicates that the Veteran had been treated for low back pain, but it provided no information as to the nature or etiology of this pain. 

The Veteran's claims file was forwarded to a VA examiner for review in October 2010. The examiner opined that the Veteran's degenerative disc and joint disease of the lumbar spine with radiculopathy was not permanently aggravated by the residuals of his bilateral osteoarthritis of the knees status post prostheses. The examiner explained that the Veteran had no back pain prior to the total knee replacement of either knee, and as such, there was no baseline manifestation of the lumbar spine and no aggravation of the lumbar condition by the knee condition. In addition, the examiner noted that both knees and the lumbar spine had been stable since 2007 and the strength of the left lower leg after the total knee arthroplasty in 2006 was the same as the physical therapy evaluation in December 2009. 

Subsequently, the Veteran was afforded a VA examination in March 2012. It was noted that a review of the claims file revealed the insidious onset of back pain in May 2007. The examiner opined that the Veteran's spine disability was less likely than not proximately due to or the result of his service-connected knee disabilities. The examiner explained that the Veteran's radiculopathy was a natural progression of his lumbar stenosis. This lumbar condition was noted to be very common in the elderly due to multilevel disc desiccation that promotes osteophyte formation and neural foramina narrowing affecting the nerves. The examiner concluded that this would occur even without knee prostheses. In addition, an abnormal gait due to bilateral degenerative joint disease of the knees did not lead to lumbar spondylosis or stenosis. The initial onset of the Veteran's symptomatology was in 2007, and it had not progressed or worsened to cause motor weakness or atrophy. His current symptomatology was deemed to be a natural progression of the disease.

As noted above, the Board denied this claim in June 2012. However, in the December 2013 Memorandum Decision, the Court determined that the VA examinations and opinions provided in October 2010 and March 2012 were inadequate. Specifically, the Court found that, while both VA examiners provided conclusions regarding whether the Veteran's current back disorder had been aggravated by his service-connected bilateral knee disabilities, neither examiner provided an adequate rationale in support of their conclusions. 

In this regard, the Court determined that the October 2010 VA examiner provided a conclusory opinion regarding aggravation, which was not supported by an adequate rationale. The Court also determined that, while the March 2012 VA examiner opined that the Veteran's back disability is a result of aging that would occur without knee problems, the examiner failed to discuss whether the Veteran's bilateral knee prostheses have aggravated his back disorder. As a result, the Court concluded that the Board relied on inadequate medical opinions in reaching its conclusion, thereby necessitating that the June 2012 decision be vacated and remanded in order to obtain a medical opinion addressing aggravation.

In response to the June 2012 Board decision, the Veteran also submitted a statement indicating that, while he played golf two to three times a week, it was over 10 years ago and he always played with a handicap and drove a golf cart to keep walking to minimum. He continued that he could not walk without a walker and had diminished strength. 

In July 2014, the Board remanded the case for another addendum opinion, which was accomplished in August 2014. The examiner again opined that the Veteran's back disorder was not aggravated beyond the natural progression by his service-connected knee disorders. The examiner rationalized that the nonservice-connected lumbar spinal stenosis with radiculopathy did not increase in severity beyond its natural progression. The Veteran's back complaints began in 2007 manifested as radicular pain. The lumbar spine examination in 2008 only revealed decreased light touch sensation on the left leg. He had no motor weakness of the lower extremities, muscle atrophy, complaints of paresthesia or numbness, or bowel or bladder incontinence. The Veteran reported at that time that he could walk more than a 1/4 of a mile and he was able to do his activities of daily living. Review of the primary care notes showed no further progression of his lumbar stenosis with radiculopathy that could be attributed to his bilateral knee prostheses/condition. The examiner also observed that the difficulty with walking was due to his age and not due to his lumbar stenosis based on the primary care notes that were silent regarding his back condition. 
 
The Board observes that the August 2014 VA examiner considered the Veteran's record and medical history in the report. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Ardison v. Brown, 6 Vet. App. 405, 407 (1994). Although there appears to be some indication by the representative in the January 2015 brief that the examiner did not fully know the extent and severity of the Veteran's knee disabilities and relied on some sort of ability to play golf, there was no mention of golf in the addendum opinion. A prior September 1997 report indicated that the Veteran played golf, but there is no indication that this information was unduly relied upon in the current opinion. The examiner clearly reviewed the claims file and summarized pertinent clinical records so he was fully aware of the extent of the Veteran's bilateral knee disorder. Additionally, the VA examiner provided an etiological opinion, complete with the rationale described above. Barr, supra. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Consequently, the Board assigns great probative value to the August 2014 VA examiner's opinion.

According to the March 2008 VA examiner, the Veteran's degenerative joint disease of the knees and uneven gait did not result in his degenerative disc and joint disease of the lumbar spine. Rather, degenerative joint and disc disease were caused by every day wear and tear. Again, the October 2010 VA examiner opined that the Veteran's degenerative disc and joint disease of the lumbar spine with radiculopathy was not permanently aggravated by the residuals of his bilateral osteoarthritis of the knees status post prostheses. Moreover, the March 2012 VA examiner also opined that the Veteran's spine disability was less likely than not due to or the result of his service-connected disabilities. This was a very common condition for an elderly person and the examiner felt that this condition would have occurred regardless of his knee disabilities. As such, the preponderance of the medical evidence clearly showed that the Veteran's back disorder was not proximately due to, or caused by, his service-connected bilateral knee disorders. In regard to whether the Veteran's bilateral knee disabilities caused his back disorder, the Board accords great probative weight to such VA opinions as the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. However, as pointed out above, the Court determined that these examiners failed to provide sufficient rationale for their findings as to aggravation. 

Nevertheless, importantly, after reviewing the record, the August 2014 VA examiner also opined that the Veteran's back condition was not aggravated by his bilateral knee disorder and provided a sufficient rationale for such opinion based on medical evidence showing no further progression of the Veteran's back disorder. As discussed above, the Board finds the addendum opinion to be sufficient for appellate review and of high probative value. Thus, the Board also finds that the preponderance of the evidence also weighs against finding that the Veteran's bilateral knee disorder aggravated his back disorder beyond the natural progression of the disability. 

Moreover, no other evidence of record refutes the VA examiners' opinions. In this regard, none of the remaining private medical records or VA treatment records suggests an etiological relationship between the Veteran's current back disability and his service-connected knee disabilities. As such, given that the medical evidence of record shows that the Veteran's back disorder is not proximately due to or aggravated by the service-connected bilateral knee disorders, service connection on a secondary basis is not warranted.

The Veteran's representative also suggested in a May 2012 statement that a private record from December 2008 was positive evidence in favor of the Veteran's claim. However, the mere statement that the Veteran suffers from gait impairment due to a combination of his back disability and his knee replacements is not suggestive of a positive correlation. The physician did not suggest at any time that the Veteran's gait impairment stemming from his bilateral knee disabilities resulted in, or attributed to, his current back disabilities. 

The Board recognizes that the Veteran believes he is entitled to service connection for a back disorder as secondary to his service-connected knee disabilities. In his June 2008 notice of disagreement, the Veteran asserted that he never had a back problem until recently and that he believed it arose as a result impaired walking due to his knee disabilities. In numerous statements of record, the Veteran has also described his limitations with respect to walking as well as other activities due to his knees. Lay assertions may serve to support a claim for service connection by demonstrating the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

In the instant case, the Veteran is competent to report his symptoms as well as describe his impaired gait. However, the record contains no evidence to suggest that the Veteran has the necessary medical expertise to offer an opinion linking his current back disability to his knee disabilities. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). The Board must find that he is not competent to give such a medical opinion. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship, i.e., the impact of an altered gait on the spine. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the opinion of the Veteran is nonprobative evidence. See Davidson, supra; Jandreau, supra; see also Woehlaert, supra. In turn, his statements are outweighed by the more probative VA examinations with opinions. 

Again, the record contains no competent medical evidence linking the Veteran's back disability to his service-connected knee disabilities. Rather, the VA examiners of record have concluded that there is no known correlation between impaired gait and a back disorder, and that the Veteran's current symptomatology is representative of deterioration one would expect for someone of the Veteran's age. 

In conclusion, based on the analysis above, the preponderance of the evidence is against the Veteran's claim for service connection for a back disorder on secondary basis. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert, supra.


ORDER


Service connection for a back disorder as secondary to service-connected osteoarthritis, residuals of right knee injury, status post total knee replacement, and service-connected degenerative arthritis, left knee, status post left knee replacement, is denied. 



____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs