**Albert L. ARDISON, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–1268.**

United States Court of Veterans Appeals.

April 4, 1994.

Robert F. Redmond, Jr., Richmond, VA, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Susan A. Wuchinich, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

IVERS, Judge:

Albert L. Ardison appeals a June 24, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied an increased rating for service-connected tinea pedis (athlete's foot) (now rated 10% disabling). *Albert L. Ardison,* BVA 92–15455 (June 24, 1992). On June 21, 1993, the Secretary filed a mo-

tion to vacate the BVA decision and for summary remand. On July 19, 1993, appellant filed a reply in opposition to the Secretary's motion. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). Because of the issues presented by this case, the Court holds that this case is not appropriate for summary disposition. *See Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the Court vacates the June 1992 decision of the BVA and remands the case for readjudication consistent with this opinion.

## I. Factual Background

Appellant served on active duty in the United States Marine Corps from August 18, 1951, to June 14, 1963. *See* R. at 46. A June 11, 1953, service medical record noted that appellant had "Mycotic or Atopia dermititis [sic] bilateral both feet, incurred in USMC in 1952 and has been persistent e[v]er since." R. at 29. This condition was also noted on appellant's separation examination report. R. at 34–35. On April 23, 1964, a VA regional office (RO) granted service connection for tinea pedis, which it evaluated as 0% disabling. R. at 46–47.

In September 1973, appellant filed a claim for an increase in the rating for tinea pedis. R. at 66. A March 15, 1974, VA clinical record assessed the condition as mild. R. at 82. On May 28, 1974, the RO denied a compensable evaluation for the condition. R. at 87. On June 25, 1974, appellant filed a Notice of Disagreement (NOD) regarding the RO's decision. R. at 88. In a September 4, 1974, letter, appellant's treating physician, Dr. Edward L. Smith, wrote: "After wearing his shoes for an eight-hour day for three days, his feet show evidence of active fungal lesions with purulent vesicles, at base of right great toe." R. at 93. (A vesicle is a blister. Webster's Medical Desk Dictionary 756 (1986).) A January 3, 1975, certificate from Dr. Smith related intermittent flareups in appellant's condition. R. at 107. For instance, Dr. Smith noted that on December 18, 1973, appellant had experienced a recurrence of the condition accompanied by macerated skin and vesicles. *Ibid.* ("Macerated" refers to skin that has been softened by having been steeped or soaked in fluid.

Stedman's Medical Dictionary, Illustrated 817 (23rd ed. 1976) [hereinafter "Stedman's"].) On September 4, 1974, appellant experienced another flareup; several days later, on September 24, 1974, the vesicles had spread to the hands and possibly his lips. *Ibid.* By September 31, 1974, the condition had improved. *Ibid.* Dr. Smith diagnosed appellant with "Mycotic infection both feet, hands, chronic and acute [with] secondary bacterial infection." *Ibid.* On May 8, 1975, the RO continued its denial of an increased evaluation. R. at 114. On October 3, 1975, the Board found that the tinea pedis was "manifested by recurring episodes of redness, blisters and maceration of the feet which result in soreness and itching, and id reaction involving the hands and lips" and assigned a 10% rating for the condition. R. at 137–38. (An "id reaction" is defined as "a state of sensitivity of the skin in which a part remote from the primary lesion reacts . . . to substances of the pathogen, giving rise to a secondary inflammatory lesion." Stedman's at 687–88.)

On October 1, 1980, appellant filed for an increased evaluation. R. at 140. A January 29, 1981, VA medical record stated that appellant had "scaling eruption both feet plantar surfaces; both great toes moderately involved." R. at 152. On April 8, 1981, the RO denied appellant's claim for an increased rating. R. at 155. The VA then considered additional medical records. An August 28, 1981, VA progress note also indicated that, upon examination, appellant presented "a resolving vesicular lesion . . . on [the] hands [and] feet." R. at 164. The note also provided a diagnosis of tinea pedis with id reaction on the hands. *Ibid.* An October 2, 1981, VA progress note from a VA dermatology clinic indicated that appellant's dermaphytosis of the feet had "improved considerably." R. at 163. On October 30, 1981, the RO continued its denial of an increased rating. R. at 165. On September 30, 1983, the Board denied an increase in the rating for service-connected tinea pedis, which remained rated as 10% disabling. R. at 180.

On January 3, 1990, appellant filed a claim for an increase on the grounds that his condition had worsened. R. at 181. After review-

ing certain records obtained from the Loma Linda, California, VA Medical Center (R. at 182–83), the RO denied the claim for an increase and sent notification to appellant on April 5, 1990. R. at 184–85. Appellant filed an NOD on April 30, 1990. R. at 186. Having reviewed the Statement of the Case sent to him, appellant informed the RO that it had not obtained the correct medical records from the VA Medical Center. R. at 192. On April 8, 1991, the Board remanded the claim for the RO to obtain additional records of treatment and to schedule "a special VA dermatology examination in order to determine the extent of the veteran's tinea pedis. . . ." R. at 219. In September 1991, appellant underwent a VA examination. R. at 241. On October 10, 1991, the RO continued its denial of an increased rating. R. at 242. On June 24, 1992, the Board denied the claim for an increase in the service-connected tinea pedis (rated 10% disabling). *Ardison,* BVA 92–15455, at 6.

## II. Analysis

### A. *Duty to Assist*

■ Appellant's claim for an increase is a new claim, and we review the Board's findings of fact regarding such a claim under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Butts v. Brown,* 5 Vet. App. 532, 535 (1993) (en banc); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

In this case, however, an inadequate record frustrates judicial review. The record is inadequate because the Board did not fulfill its duty to assist appellant in the development of his claim. Once a claimant has submitted "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the Board has a duty to assist him in developing the facts pertinent to his claim. 38 U.S.C. § 5107(a); *see* 38 C.F.R. § 3.103(a) (1993); *Waddell v. Brown,* 5 Vet.App. 454, 456 (1993); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). In *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991), the Court stated: "[F]ulfillment of the statutory duty to assist here includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of the prior medical treatment, so that the evaluation of the

claimed disability will be a fully informed one."

Appellant's tinea pedis is rated by analogy to the diagnostic code (DC) for eczema. *See* 38 C.F.R. § 4.118, DC 7806 (1993); *see also* 38 C.F.R. §§ 4.20 (analogous ratings for unlisted conditions), 4.27 (DCs for unlisted conditions) (1993); *Butts,* 5 Vet.App. at 537; *Lendenmann v. Principi,* 3 Vet.App. 345, 349–51 (1992); *Pernorio v. Derwinski,* 2 Vet. App. 625, 629 (1992). The condition is currently rated 10% disabling. The pertinent code provides that a 10% rating is warranted "[w]ith exfoliation, exudation or itching, if involving an exposed surface or extensive area." 38 C.F.R. § 4.118, DC 7806. The code further provides that a 30% rating is warranted "[w]ith exudation or itching constant, extensive lesions, or marked disfigurement." *Ibid.* Under the code, a 50% rating is warranted "[w]ith ulceration or extensive exfoliation or crusting, and systemic or nervous manifestations, or exceptionally repugnant." *Ibid.*

Here, the September 1991 VA examination was not adequate, given appellant's prior history of remission and recurrence of tinea pedis. *See also* 38 C.F.R. § 4.2 (1993) (rating specialist must interpret examination reports in light of whole record, "reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present"; if diagnosis is not supported by findings on examination report or if report does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."); *Abernathy v. Principi,* 3 Vet.App. 461, 464 (1992) (BVA decision was erroneous where, inter alia, it relied on incomplete examination). In *Bowers v. Derwinski,* 2 Vet.App. 675, 676 (1992), the Court examined, inter alia, the above DC and concluded: "As we read the regulations, 38 C.F.R. § 4.1 (1991), and the diagnostic codes, cited above, it is the frequency and duration of the outbreaks and the appearance and virulence of them *during the outbreaks* that must be addressed. . . ." (Emphasis added.) In this case, there is evidence that appellant's tinea pedis consists of active and inactive stages during which the

condition improves. *See, e.g.,* R. at 208–10. For instance, at a December 18, 1974, personal hearing, appellant testified:

> ... I was informed by my representative ... that to go before the Board, I should have evidence or so to speak, actually my condition occurred when I get in my shoes three or four days at a time, any eight hour period during the days, three or four days period then I break out, it's when this condition gets worse. So he told me I should do this before I go before the Board and he was going to transfer my records up here and that I would be called in. He said before you go there you should let the condition worsen, get worse by wearing your shoes. Which I did, but I'm talking back in August now here I am and it's December, so since this time my face has broken out, my lip which you can still see was broken out, my hands and everything else which I'd been to my doctor and also went ... [ellipsis in original] with the condition at that time and I have witnesses through there because they made notations of this. The condition was in my face and they said get out of those shoes, he says and don't suffer yourself anymore, because I was broken out all over [and] my lips had split open.

R. at 101–02. Recognizing the fluctuating nature of appellant's condition, the hearing officer stated:

> Mr. Ardison, you have mentioned the fact that your feet will erupt from time to time with an acute exacerbation of the condition. I'd suggest that when this occurs you immediately go to the [ ] VA Outpatient Clinic at the nearest VA facility and have them examine your feet and send us a description of their findings and in that way you're sure that regardless of where the symptoms appear, whether it's the face, the hands, the buttocks or the feet, we'll be aware of it and the Board can review their findings at that time.

R. at 102–03. Nevertheless, despite the fluctuating nature of appellant's tinea pedis, the VA examination was not performed during the active stage of the condition. The September 1991 VA examination was performed during an inactive stage. In the resulting examination report, a VA examiner wrote: "Several residual vesicles are seen on feet. There is some interdigital maceration. No active vesiculation or bullae formation is present." R. at 241. (A "bulla" is a blister. STEDMAN's at 202.) The examiner diagnosed appellant as having bilateral tinea pedis which was severe only by history. *Ibid.* Moreover, although an "id reaction" affecting the hands and lips has been found in the past, the September 1991 VA examination did not mention any such manifestations, and it is not clear whether the VA examiner evaluated appellant for such a reaction. On remand, the Board must provide for the conduct of an adequate examination during the active stage of appellant's tinea pedis, and must, on the basis of that examination and all evidence of record, ascertain the existence, extent, and significance under the rating schedule of any "id reaction" due to tinea pedis.

### B. *Extraschedular Consideration*

■ Appellant has also stated that the condition affects his employability. In a December 1991 letter attached to a VA Form 1–9 (Appeal to BVA), appellant wrote:

> ... I have to be out of my shoes 50–60% of the time, to keep this condition under control. I have stated before, my left eye and my right foot and leg are half numb. I cannot stay in my shoes for more than 2 weeks at a time, then my feet break out, and I have to go through the healing process again, which takes 3–4 weeks out of my shoes for it to heal, using the medication I have 3 times a day. After 35 years I have learned to live with this condition, but cannot be gainfully employed and take 3 and 4 weeks off at a time. Therefore, this is the reason I am asking for an increase in my compensation. I gave up my career, and the Marine Corp[s], because of this condition.

R. at 248–49. Under 38 C.F.R. § 3.321(b)(1) (1993), the VA's Chief Benefits Director or the Director of the Compensation and Pension Service is authorized to approve

> an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-

connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

In its June 1992 decision, the Board simply stated: "An extraschedular evaluation is not appropriate as the veteran's tinea pedis disability is not so unusual and exceptional as to render impractical the application of the regular rating standards, pursuant to the provisions of 38 C.F.R. § 3.321(b)(1)." *Ardison,* BVA 92–15455, at 6. This statement by the Board does not make the requisite findings of fact or give reasons or bases for its decision that referral to the appropriate VA officials under 38 C.F.R. § 3.321(b)(1) was not warranted. *See Kellar v. Brown,* 6 Vet.App. 157, 161–62, (1994); *Moyer v. Derwinski,* 2 Vet.App. 289, 293–94 (1992) (Court remanded for BVA to give reasons or bases regarding potential applicability of 38 C.F.R. § 3.321(b)(1)). Therefore, on remand, the Board must make the requisite findings of fact and provide sufficient reasons or bases on the issue of whether referral of the extraschedular consideration issue is indicated.

## C. *Remedy*

 In his brief, appellant argues that reversal is the appropriate remedy. Reversal is the appropriate remedy when "[t]here is absolutely no plausible basis" for the BVA's decision and where that decision "is clearly erroneous in light of the *uncontroverted* evidence in appellant's favor." *Hersey v. Derwinski,* 2 Vet.App. 91, 95 (1992) (emphasis added). This situation is unlike the factual situation presented in *Karnas v. Derwinski,* 1 Vet.App. 308, 311 (1991), where the Court reversed a BVA decision reducing a veteran's disability rating. In reversing the BVA decision, the Court stated in *Karnas:* "Because there is *no* evidence to support the BVA determination, it is obvious that a mistake has been committed, the finding is not plausible, there can be only one permissible view of the evidence, and, thus, the finding is clearly erroneous." *Karnas,* 1 Vet.App. at

311 (emphasis added); *cf. Harder v. Brown,* 5 Vet.App. 183, 189 (1993) (sum of all the evidence "dictated" grant of service connection); *Barnhill v. Brown,* 5 Vet.App. 75, 77 (1993) (Court assigned 70% rating for posttraumatic stress disorder where there was "no plausible basis" for BVA's denial of increased evaluation and where "record compellingly" established entitlement to increased evaluation); *Schafrath v. Derwinski,* 1 Vet.App. 589, 596 (1991) (because case involved a rating reduction, not a rating increase, appropriate remedy was reversal of BVA decision and reinstatement of prior rating). Here, appellant cites to numerous medical records, including several from 1989, for the proposition that the record supports either a 30% or a 50% rating. However, the record also includes medical statements that appellant's tinea pedis was "under good control" (R. at 209) or presented only "mild scaling" (R. at 223, 226). *See also* R. at 199, 202, 205. In addition, albeit inadequate because, as discussed above, it was conducted during an inactive stage of the condition, the September 1991 VA examination found residual vesicles on the feet with some maceration between the toes, but "[n]o active vesiculation or bullae formation." R. at 241. The Board's failure in the duty to assist frustrates effective judicial review, but it does not dictate entitlement to an increased evaluation. *See Gilbert,* 1 Vet.App. at 57 (lack of adequate reasons or bases in the BVA's decision frustrates effective judicial review) (quoting *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)). As the Supreme Court of the United States has stated:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *see also Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 347

(D.C.Cir.1989) ("The proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings."). Therefore, the appropriate remedy is a remand.

### III. Conclusion

Accordingly, upon consideration of the record and the pleadings of both parties, we VACATE the June 1992 decision of the BVA and REMAND the case for readjudication consistent with this opinion.