Citation Nr: 1527839 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 12-14 542A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to a disability rating in excess of 20 percent for service-connected degenerative arthritis of the lumbar spine (previously rated as lumbar strain with mechanical low back pain) (lumbar spine disability), prior to December 9, 2013. 

2. Entitlement to a disability rating in excess of 20 percent for service-connected residuals of a cervical spine injury with traumatic arthritis (cervical spine disability), prior to August 1, 2013 and from December 1, 2013. 

3. Entitlement to a disability rating in excess of 40 percent for service-connected degenerative arthritis of the lumbar spine (previously rated as lumbar strain with mechanical low back pain) (lumbar spine disability), starting December 9, 2013. 

4. Entitlement to a total disability rating due to individual unemployability.


REPRESENTATION

Appellant represented by: Disabled American Veterans
ATTORNEY FOR THE BOARD

D. M. Donahue Boushehri, Counsel 


INTRODUCTION

The Veteran served on active duty from May 1990 to June 1997. 

These matters initially came before the Board of Veterans' Appeals (Board) on appeal from June 2010 and December 2010 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. 

In a May 2014 rating decision, the Veteran, inter alia, was granted a temporary total evaluation of 100 percent, assigned effective December 9, 2013, based on surgical or other treatment necessitating convalescence for the lumbar spine, and a 40 percent evaluation, effective April 1, 2014; and a temporary total evaluation of 100 percent, assigned effective August 1, 2013, based on surgical or other treatment necessitating convalescence for the cervical spine, and a 20 percent evaluation, effective December 1, 2013; and was denied a disability rating in excess of 20 percent for residuals of a cervical spine injury with traumatic arthritis. The case has returned to the Board for appellate review. Because these increased ratings did not represent a grant of the maximum benefits allowable under the VA Schedule for Rating Disabilities, these claims remained in appellate status. AB v. Brown, 6 Vet. App. 35, 38 (1993) (holding that a grant of a higher rating during the course of an appeal, but less than the maximum benefits allowable, does not abrogate the appeal). 

In a July 2014 rating decision, the RO, inter alia, extended the Veteran's temporary total evaluation based upon surgical or other procedure requiring convalescence, from April 1, 2014 to July 1, 2014, the period showing that he continued to recover from his lumbar spine disability. The RO also reduced the evaluation of the lumbar spine disability to 40 percent disabling, effective July 1, 2014, the expiration of convalescence. 

In an August 2014 decision, the Board denied, in pertinent part, the issues of entitlement to a disability rating in excess of 20 percent for a lumbar spine disability prior to December 9, 2013, and entitlement to a disability rating in excess of 20 percent for a cervical spine disability, prior to August 1, 2013 and from December 1, 2013. The Veteran appealed the Board's decision to the U.S. Court of Appeals for Veterans Claims, which, pursuant to a May 2015 joint motion for partial remand (JMR), vacated the Board's August 2014 decision insofar as it did not award higher ratings for lumbar and cervical spine disabilities. 

In the same August 2014 Board decision, the Board also remanded entitlement to a disability rating in excess of 40 percent for service-connected lumbar spine disability from July 1, 2014, and entitlement to a TDIU. As it does not appear that the RO has had the opportunity to conduct all of the development directed in the Board's August 2014 remand, those claims will be remanded again.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to a disability rating in excess of 40 percent for service-connected lumbar spine disability from December 9, 2013 and entitlement to a TDIU are addressed in the remand portion of the decision below and are remanded to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to December 9, 2013, considering the Veteran's pain and corresponding functional impairment, including flare-ups, his service-connected lumbar spine disability had not been productive of forward flexion of the thoracolumbar spine to 30 degrees or less, any ankylosis, or intervertebral disc syndrome (IVDS) with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. 

2. Throughout the appeal, considering the Veteran's pain and corresponding functional impairment, including flare-ups, his service-connected cervical spine disability has not been productive of forward flexion of the cervical spine to 15 degrees or less; ankylosis; or IVDS with incapacitating episodes having a total duration of at least 2 weeks during the past 12 months. 


CONCLUSIONS OF LAW

1. Prior to December 9, 2013, the criteria for a rating in excess of 20 percent for the service-connected lumbar spine disability were not met. 38 U.S.C.A. §§ 1154(a), 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5237 (2014). 

2. Throughout the appeal period, the criteria for a rating in excess of 20 percent for the service-connected cervical spine disability are not met. 38 U.S.C.A. §§ 1154(a), 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.40, 4.45, 4.59, 4.71a, DC 5237 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide notification to the Veteran with respect to establishing entitlement to benefits, and a duty to assist with development of evidence under 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159(b). 

The duty to notify was satisfied by way of March 2010 and August 2010 letters, sent prior to the June 2010 and December 2010 rating decisions, which informed the Veteran of his duty and the VA's duty for obtaining evidence. These letters included notice of the type of evidence necessary to establish a disability rating or effective date for the disability under consideration, pursuant to the recent holding in Dingess/Hartman v. Nicholson, 19 Vet App 473 (2006). Further, he was notified that to substantiate a claim he must provide, or ask the Secretary to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on his employment and daily life. Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated on other grounds sub nom., Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The March 2010 letter also contained information regarding claims for secondary service connection. 

VA also has a duty to assist the Veteran in the development of the claims. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all relevant facts have been properly developed, and that all available evidence necessary for equitable resolution of the issues has been obtained. The Veteran's service treatment records, VA and private treatment records, and lay statements have been obtained. 

 A VA medical opinion will be considered adequate if it (1) is based upon consideration of the Veteran's prior medical history, (2) describes the disability in sufficient detail so that the Board's "'evaluation of the claimed disability will be a fully informed one,'" Ardison v. Brown, 6 Vet. App. 405, 407 (1994) (quoting Green v. Derwinski, 1 Vet. App. 121, 124 (1991)), and (3) "supports its conclusion with an analysis that the Board can consider and weigh against contrary opinions." Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The Board finds that, collectively, the February 1998, May 2009, May 2010, September 2010, October 2010, March 2012, and December 2013 VA examination reports are adequate because the examiners discussed the Veteran's medical history, described the claimed disorders and service-connected disabilities in sufficient detail, and supported all conclusions with analysis and, where possible, objective test results. 

The Veteran has been given ample opportunity to present evidence and argument in support of his claim. The Board additionally finds that general due process considerations have been complied with by VA, and the Veteran has had a meaningful opportunity to participate in the development of the claim. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006); 38 C.F.R. § 3.103 (2014). 

Analysis

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity in civil occupations. 38 U.S.C.A. § 1155. The disability must be viewed in relation to its history. 38 C.F.R. § 4.1. A higher evaluation shall be assigned where the disability picture more nearly approximates the criteria for the next higher evaluation. 38 C.F.R. § 4.7. 

Where, as in this case, an increase in the level of a disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). The Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). Thus, the analysis in the following decision is undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

Under 38 C.F.R. § 4.71a, DC 5010, arthritis due to trauma and substantiated by x-ray findings is rated as degenerative arthritis. Under DC 5003, for degenerative arthritis without compensable limitation of motion, a 10 percent rating applies where there is x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, and a 20 percent rating applies where there is x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations. For the purpose of rating disability from arthritis, the shoulder, elbow, wrist, hip, knee, and ankle are considered major joints; multiple involvements of the interphalangeal, metacarpal and carpal joints of the upper extremities, the interphalangeal, metatarsal and tarsal joints of the lower extremities, the cervical vertebrae, the dorsal vertebrae, and the lumbar vertebrae, are considered groups of minor joints, ratable on a parity with major joints. The lumbosacral articulation and both sacroiliac joints are considered to be a group of minor joints, ratable on disturbance of lumbar spine functions. 38 C.F.R. § 4.45(f). 

A lower back disability may be rated pursuant to the General Rating Formula for Diseases and Injuries of the Spine set forth in DCs 5235-5242. Under the general rating formula, a 20 percent rating requires that the condition be manifested by forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent rating requires that the condition be manifested by forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine. A 40 percent rating requires that the condition be manifested by forward flexion of the thoracolumbar spine of 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating requires unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent rating requires unfavorable ankylosis of the entire spine. 

Any associated objective neurologic abnormalities are to be evaluated separately, under an appropriate diagnostic code. See General Rating Formula for Diseases and Injuries of the Spine, Note 1. 

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. Normal forward flexion of the cervical spine is 0 to 45 degrees, extension is 0 to 45 degrees, left and right lateral flexion are 0 to 45 degrees, and left and right lateral rotation are 0 to 80 degrees. See General Rating Formula for Diseases and Injuries of the Spine, Note 2. 

IVDS is rated under DC 5243, based upon the frequency of incapacitating episodes. An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. IVDS is evaluated either on the total duration of incapacitating episodes over the past twelve months, or by combining under 38 C.F.R. § 4.25 separate ratings of its chronic orthopedic and neurologic manifestations along with rating of all other disabilities, whichever method results in the higher rating. See 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

Rating the lumbar spine disability, prior to December 9, 2013
 
Treatment records from the Veteran's private chiropractor, "W.G.C.," dated from July 2009 to March 2010, show that the Veteran was repeatedly "incapacitated" during his treatment, and that he often required rest for the entire day when that occurred. 

During a May 2010 VA spine examination the Veteran complained of symptoms of decreased motion, stiffness, weakness, spasms and pain in the center of his lower back. The examiner observed there were incapacitating episodes of spine disease in the thoracolumbar region during the previous 12 month period, including on three days in January 2010, and for one day each in February 2010 and in March 2010. The Veteran reportedly was able to walk one to three miles. On physical examination, the Veteran's head position, posture, symmetry in appearance, and gait were found to be normal, and there was no gibbus, kyphosis, list, lumbar flattening, lumbar lordosis, scoliosis, or reverse lordosis. The examiner observed there was spasm to the right side of the thoracic sacrospinalis, but no atrophy, guarding, pain with motion, tenderness or weakness. Moreover, there was no muscle spasm, localized tenderness or guarding severe enough to be responsible for abnormal gait or abnormal spinal contour. Range of motion testing revealed forward flexion to 85 degrees, extension to 25 degrees, and right and left lateral flexion and rotation to 30 degrees. There was no objective evidence of pain following repetitive motion, or any additional limitations after three repetitions of range of motion. The Veteran was diagnosed with mechanical lower back pain, no radiologic change. 

During a September 2010 VA spine examination, the examiner noted there was no history of urinary incontinence, urgency, retention requiring catheterization, frequency or nocturia. Also, there was no history of fecal incontinence, obstipation, erectile dysfunction, numbness, paresthesias, leg or foot weakness, falls, unsteadiness, or fatigue. However, there was a history of decreased motion, stiffness, pain, and spasm. On physical examination, the Veteran did not have gibbus, kyphosis, lumbar lordosis, lumbar flattening, reverse lordosis, list, scoliosis, or thoracolumbar spine ankylosis. He had normal head position, posture, gait, and symmetry in appearance. He did not have spasm, atrophy, guarding, pain with motion, tenderness, or weakness of the thoracolumbar sacrospinalis. Range of motion testing revealed flexion to 80 degrees, extension to 30 degrees, left lateral flexion to 25 degrees, left lateral rotation to 30 degrees, right lateral flexion to 26 degrees, and right lateral rotation to 30 degrees. There was no objective evidence of pain on active range of motion, additional limitation with repetitive motion, objective evidence of pain following repetitive motion, or additional limitation after three repetitions of range of motion. The Veteran was diagnosed with nonspecific lower back pain with referral to right leg and lumbar strain with mechanical low back pain. 

During a March 2012 VA spine examination, the examiner noted there were no flare-ups that impacted the function of the thoracolumbar spine. On physical examination, the Veteran did not have gibbus, kyphosis, lumbar lordosis, lumbar flattening, reverse lordosis, list, scoliosis, or thoracolumbar spine ankylosis. He had normal head position, posture, gait, and symmetry in appearance. He did not have spasm, atrophy, guarding, pain with motion, tenderness, or weakness of the thoracolumbar sacrospinalis. Range of motion testing revealed flexion to 80 degrees with painful motion at 80 degrees, extension to 30 degrees, left lateral flexion at 30 degrees, left lateral rotation to 30 degrees, right lateral flexion at 30 degrees, and right lateral rotation to 30 degrees with painful motion at 30 degrees. There was no objective evidence of pain on active range of motion for extension, left lateral flexion and rotation, and right lateral flexion. There was also no objective evidence of pain following repetitive motion, or additional limitation after three repetitions of range of motion. There was no functional loss and/or impairment of the thoracolumbar spine, and there was no guarding or muscle spasm of the thoracolumbar spine. There was also no evidence of IVDS of the thoracolumbar spine. The Veteran was diagnosed with stable broad-based central disc protrusion L5 to S1 and focal left paracentral disc protrusion T12 to L1. 

Prior to December 9, 2013, considering the Veteran's pain and corresponding functional impairment, including flare-ups, his service-connected lumbar spine disability had not been productive of forward flexion of the thoracolumbar spine to 30 degrees or less, any ankylosis, or IVDS with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. 38 C.F.R. § 4.71a, DC 5237. 

Rating the cervical spine disability, prior to August 1, 2013 and since December 1, 2013

During the May 2010 VA spine examination, the examiner noted range of motion testing revealed flexion to 45 degrees, extension to 40 degrees, left and right lateral flexion and rotation to 35 degrees. There was no objective evidence of pain on active range of motion, additional limitation with repetitive motion, objective evidence of pain following repetitive motion, or additional limitation after three repetitions of range of motion. Also, there was no ankylosis of the cervical spine. The Veteran was diagnosed with cervical spine injury with traumatic arthritis. 

During a September 2010 VA spine examination, on physical examination, the Veteran did not have cervical spine ankylosis. Range of motion testing revealed flexion to 42 degrees, extension to 38 degrees, left lateral flexion to 39 degrees, left lateral rotation to 38 degrees, right lateral flexion to 40 degrees, and right lateral rotation to 37 degrees. There was no objective evidence of pain on active range of motion, additional limitation with repetitive motion, objective evidence of pain following repetitive motion, or additional limitation after three repetitions of range of motion. The Veteran was diagnosed with discogenic neck pain secondary to mild cervical spondylosis and residuals of cervical spine injury with traumatic arthritis. 

During a March 2012 VA spine examination, the examiner noted there were no flare-ups that impacted the function of the cervical spine. On physical examination, range of motion testing revealed flexion to 40 degrees with painful motion at 35 degrees, extension to 40 degrees with painful motion at 30 degrees, left lateral flexion to 45 degrees with painful motion at 30 degrees, left lateral rotation to 75 degrees with painful motion at 70 degrees, right lateral flexion to 70 degrees with painful motion at 70 degrees, and right lateral rotation to 30 degrees with painful motion at 30 degrees. After three repetitions of range of motion, findings included flexion, extension, and left and right lateral flexion to 40 degrees, right lateral rotation to 70 degrees, and left lateral rotation to 75 degrees. There was no functional loss and/or impairment of the cervical spine following repetitive testing, and there was no guarding or muscle spasm of the cervical spine. There were no neurologic abnormalities. The examiner noted that the Veteran had IVDS of the cervical spine, without any incapacitating episodes in the past 12 months. The Veteran was diagnosed with cervical strain. 

During a December 2013 VA spine examination, the examiner noted there were bi-weekly flare-ups of stiffness that impacted the function of the cervical spine. On physical examination, range of motion testing revealed flexion to 25 degrees with painful motion at 20 degrees, extension to 20 degrees with painful motion at 20 degrees, left lateral flexion to 20 degrees with painful motion at 20 degrees, left lateral rotation to 25 degrees with painful motion at 20 degrees, right lateral flexion to 20 degrees with painful motion at 20 degrees, and right lateral rotation to 35 degrees with painful motion at 25 degrees. After three repetitions of range of motion, findings include flexion to 25 degrees, extension to 20 degrees, and left and right lateral flexion to 20 degrees, right lateral rotation to 35 degrees, and left lateral rotation to 25 degrees. There was functional loss and/or impairment of the cervical spine after repetitive testing in the form of less movement than normal, and pain on movement, but there was no ankylosis of the spine or IVDS. The Veteran was diagnosed with degenerative disc disease and anterior cervical disc fusion from C5 to C6. 

Throughout the appeal, considering the Veteran's pain and corresponding functional impairment, including flare-ups, his service-connected cervical spine disability has not been productive of forward flexion of the cervical spine to 15 degrees or less; ankylosis; or IVDS with incapacitating episodes having a total duration of at least 2 weeks during the past 12 months. 38 C.F.R. § 4.71a, DC 5237. 

Extraschedular Ratings

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The United States Court of Appeals for Veterans Claims (Court) has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

Here, the applicable rating criteria adequately contemplate the severity and symptoms of the Veteran's lumbar and cervical spine disabilities, such as pain and limited motion. Notably, these signs and symptoms, and their resulting impairment, are contemplated by the rating schedule. See 38 C.F.R. §§ 4.40, 4.45, 4.71a, DCs 5237, 5243; DeLuca, Mitchell, supra. The rating criteria are therefore adequate to evaluate both the lumbar and cervical spine and referral for consideration of an extraschedular rating is not warranted. 

The Board further observes that, even if the available schedular evaluation for the disabilities is inadequate (which it manifestly is not), the Veteran does not exhibit other related factors such as those provided by the regulation as "governing norms." The record does not show that the Veteran has required frequent hospitalizations for his disabilities. There is also no persuasive evidence in the record to indicate that the service-connected disability on appeal would cause any impairment or interference with employment over and above that which is already contemplated in the assigned schedular ratings. Accordingly, the Board concludes that there is a preponderance of the evidence against the assignment of a higher rating on an extraschedular basis. 

Lastly, according to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b) ] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities.

In this case, the Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Here, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria.

In addition to cervical and lumbar spine disabilities, the Veteran is service-connected for radiculopathy of the left and right upper extremities, degenerative change of the right shoulder, and chronic sinusitis. However, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.



ORDER

Entitlement to a disability rating in excess of 20 percent for service-connected degenerative arthritis of the lumbar spine (previously rated as lumbar strain with mechanical low back pain) (lumbar spine disability), prior to December 9, 2013, is denied. 

Entitlement to a disability rating in excess of 20 percent for service-connected residuals of a cervical spine injury with traumatic arthritis (cervical spine disability), prior to August 1, 2013 and from December 1, 2013, is denied. 


REMAND

The issue of entitlement to a disability rating in excess of 40 percent for service-connected lumbar spine disability from December 9, 2013 was remanded in the Board's August 2014 decision for additional development to include a VA spine examination. The Veteran underwent a VA examination in September 2014; however, at that time, he refused any range of motion testing due to pain. VA and private treatment records indicate the Veteran underwent surgery in January 2015. A June 2015 RO decision granted a temporary evaluation of 100 percent, effective January 2, 2015, based on surgical or other treatment necessitating convalescence. The RO assigned a 40 percent evaluation from April 1, 2015.

As there is no indication that an additional post-surgical VA examination has been conducted, the Board finds an additional remand is necessary for a VA spine examination. 

The issue of entitlement to TDIU was also remanded in the Board's August 2014 decision for additional development to include a VA general medical examination for an opinion on employability. During the September 2014 VA spine examination, the examiner determined that the Veteran's low back disability does not render him unable to secure or follow substantially gainful occupation. However, the examiner failed to consider all of the Veteran's service connected disability when determining his employability. Furthermore, there is no indication that the Veteran underwent a separate "general medical examination to ascertain the impact of all of his service-connected disabilities on his unemployability" as noted in the August 2014 Board remand. Therefore, a remand is necessary for additional adjudication. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran for a VA examination to reassess the severity of the Veteran's lumbar spine disability. All diagnostic testing and evaluations needed to make this determination should be performed, and all clinical findings reported in detail. As well, it is imperative that the examiner review the claims file for the pertinent medical and other history, including a complete copy of this remand. 

When reassessing the severity of the lumbar spine disability, the examiner must specify the range of motion on forward flexion, backward extension, left and right lateral flexion, and left and right rotation of the lumbar spine. These ranges of motion should be measured in degrees, with normal range of motion additionally indicated for comparison. If motion is so restricted that there is what amounts to ankylosis, favorable or unfavorable, then this must be expressly indicated. 

The examiner must also determine whether there are objective clinical indications of pain/painful motion, weakened movement, premature/excess fatigability, or incoordination and, if feasible, these determinations should be expressed in terms of the degree of additional range of motion loss due to such factors. This includes instances when these symptoms "flare-up" or when the lumbar spine is subject to prolonged, repetitive motion over a period of time. And this determination also should be portrayed, if feasible, in terms of the degree of additional range of motion lost due to these factors. 

The examiner should also comment on whether the Veteran has any associated degenerative disc disease, i.e., IVDS involving incapacitating episodes, and if so, the total duration of them during the past 12 months. 

2. Schedule the Veteran for an appropriate VA a general medical examination to ascertain the impact of all of his service-connected disabilities on employability. 

A copy of this remand and all relevant medical records should be made available to the examiner, to include any pertinent records in Virtual VA. The examiner is asked to confirm whether paper and/or electronic records were available for review. 

The examiner must evaluate and discuss the effect of all of the Veteran's service-connected disabilities on the Veteran's ability to function in a work environment. The examiner should opine as to the functional/occupational impact of each disability from the perspective of the Veteran's ability to accomplish task in a work environment. 

A complete rationale for any opinion expressed should be provided. If an opinion cannot be expressed without resort to speculation, discuss why such is the case. 

3. Then readjudicate the appeal. If any claim remains denied, issue a supplemental statement of the case to the Veteran and his representative and provide an opportunity to respond before the case is returned to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). 



____________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs