Citation Nr: 1736698 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 06-38 846 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUES

1. Entitlement to an effective date prior to October 5, 2015, for the award of an increased 10 percent rating for service-connected psoriasis and seborrheic dermatitis.

2. Entitlement to an initial rating in excess of 10 percent for psoriasis and seborrheic dermatitis.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Barone, Counsel


INTRODUCTION

The Veteran served on active duty from July 1996 to July 2002.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA) which granted service connection for psoriasis with seborrheic dermatitis and assigned a noncompensable initial disability rating.

The Veteran presented testimony at a Board hearing in May 2011. A transcript of the hearing is associated with his claims folder. The Veterans Law Judge who conducted the hearing has retired, and the Veteran was offered the opportunity for a Board hearing before a judge who would decide his appeal. He accepted that offer, and so the Board remanded the case to the RO to schedule that hearing in May 2012. However, later that month, the Veteran withdrew his request for that hearing.

In May 2015, the Board remanded all claims which were then on appeal to the RO for additional development. The case returned to the Board in May 2017, and the resolution of matters addressed in the May 2015 remand is explained in detail in the introduction section of the Board's more recent May 2017 decision. Only the psoriasis and seborrheic dermatitis issue remains on appeal before the Board at this time.

During the processing of the May 2015 Board remand, the agency of original jurisdiction (AOJ) issued a rating decision in November 2015 that awarded a newly increased 10 percent rating for psoriasis and seborrheic dermatitis and assigned an effective date of October 5, 2015 for this award. The Board notes that this new effective date assignment is within the scope of the increased rating issue on appeal before the Board, as the Veteran is seeking increased ratings for psoriasis and seborrheic dermatitis throughout a period spanning from July 13, 2004 to the present. As explained below, the Board has found that an effective date of July 13, 2004 is warranted for the 10 percent rating for psoriasis and seborrheic dermatitis. Under the particular circumstances of this case, the Board has determined that it is reasonable to recognize the new matter of revising the recent effective date assignment separately from the broader increased rating appeal. This enables the Board to appropriately simplify the case (and results in a benefit to the Veteran) by revising the recent effective date assignment with a determination at the current time. The Board then remands the clarified issue of entitlement to an initial disability rating in excess of 10 percent for psoriasis and seborrheic dermatitis. The Board has accordingly characterized the issues on the title page of this decision.

The May 2017 Board decision resolved a number of issues with final determinations, and stayed the dyshidrotic eczema rating issue (as explained in greater detail in the May 2017 Board decision). In July 2017, the United States Court of Appeals for the Federal Circuit (Federal Circuit) issued an opinion in Johnson v. Shulkin that reversed a decision by the United States Court of Appeals for Veterans Claims (CAVC) and resulted in the lifting of the stay on affected appeals. See Johnson v. Shulkin, No. 2016-2144, 2017 U.S. App. LEXIS 12601 (Fed. Cir. July 14, 2017). The Board now proceeds with appellate review of the skin disability rating claim.

In December 2015, the Veteran submitted a claim for education benefits. This matter is referred to the RO for appropriate action.

The issue of entitlement to an initial rating in excess of 10 percent for psoriasis and seborrheic dermatitis is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's service-connected psoriasis and seborrheic dermatitis affected at least 5 percent of the entire body and/or required intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs from at least as early as July 13, 2004 (the date of the filing of the original service connection claim on appeal, and the effective date of the award of service connection for the disability).


CONCLUSION OF LAW

An effective date of July 13, 2004 is warranted for the assignment of a 10 percent rating for psoriasis and seborrheic dermatitis. (This is the earliest possible effective date for the rating as it is the effective date for the award of service connection for the disability.) 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. §§ 3.400, 4.118, Diagnostic Code 7816 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110; 38 C.F.R. § 3.400. The appeal before the Board arises from the Veteran's filing of a claim for service connection on July 13, 2004, and service connection for psoriasis and seborrheic dermatitis has been established effective from that date with an initial disability rating of 0 percent. In November 2015, during the pendency of this appeal, an AOJ rating decision found that a 10 percent rating was warranted for psoriasis and seborrheic dermatitis, but assigned an effective date of October 5, 2015. As the Board finds that the Veteran's psoriasis and seborrheic dermatitis met the criteria for the 10 percent rating from at least as early as July 13, 2004, the Board finds that July 13, 2004 is the appropriate effective date of the assigned 10 percent rating.

The Veteran's psoriasis and seborrheic dermatitis is rated under Diagnostic Code 7816 pertaining specifically to psoriasis. Under this diagnostic code, psoriasis is rated under the criteria provided in Code 7816 or is rated as disfigurement of the head, face, or neck (Diagnostic Code 7800) or scars (Diagnostic Codes 7801, 7802, 7803, 7804, or 7805), depending upon the predominant disability. The 10 percent rating assigned by the AOJ was awarded on the basis of the specific criteria of Diagnostic Code 7816.

Diagnostic Code 7816 provides that a 0 percent rating is warranted for psoriasis affecting less than 5 percent of the entire body or less than 5 percent of exposed areas, with no more than topical therapy required over a 12 month period.

A 10 percent rating is warranted for psoriasis affecting at least 5 percent but less than 20 percent of the entire body, or when at least 5 percent but less than 20 percent of exposed areas, or; when intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs is required for a total duration of less than six weeks during the past 12-month period.

A 30 percent rating is warranted for psoriasis affecting 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas, or; when systemic therapy such as corticosteroids or other immunosuppressive drugs are required for a total duration of six weeks or more, but not constantly, during the past 12-month period. 

A 60 percent rating is warranted for psoriasis affecting more than 40 percent of the entire body or more than 40 percent of exposed areas, or; when constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs are required during the past 12-month period. 38 C.F.R. § 4.118. A 60 percent rating is the maximum rating under Diagnostic Code 7816.

Briefly, the Board notes that the effective date of October 5, 2015 was assigned because that was the date of the VA fee-basis examination that produced a finding that 5 percent or more of the Veteran's total body area and 5 percent or more of the Veteran's exposed body area were affected by the skin disorder. The Board notes that this extent of involvement contemplated the described "[c]urrent outbreak [] located on the gluteal folds, back, thighs and right and left shins," featuring "erythema plaques with dry flaky skin." Significantly, the evidence of record currently establishes substantially similar findings associated with outbreaks of the Veteran's service-connected skin disorder throughout the period for consideration. Of great significance, a May 2006 VA dermatology report describes that even with effective treatment ("on enbrel x years with good improvement but with resistant lesions"), five percent of the Veteran's body surface area ("BSA") was medically observed to be affected by the skin disorder. The May 2006 examiner observed: "psoriatic plaques on intragluteal, penis, and bilateral knees. BSA 5%."

The evidence does not establish that the Veteran's psoriasis skin disorder was significantly less severe during other parts of the appeal period. Service treatment records include reports documenting similar findings to those shown in the May 2006 and October 2015 assessments, including reports from April 2004 showing psoriasis with plaques on the scalp, both knees, back, thighs, and buttocks prompting treatment with methotrexate. January 2004 reports shows complaints of plaque psoriasis on the neck, shoulder blades / back, buttocks region, penis, and both knees, with medical observation of at least involvement of the scalp, near the right knee, and possible involvement between gluteal folds and the toes on the right foot.

In subsequent evidence, the Veteran's psoriasis is repeatedly described as having come under good control from treatment including what appears to be systemic therapy such as corticosteroids or other immunosuppressive drugs (as discussed in the remand section, below), but even during this time the Veteran reported that the psoriasis would come and go (included as noted in the September 2006 VA examination report, with specific reference to the scalp at that time). A number of reports describe that the Veteran had remaining resistant lesions, and that his improvement was specifically attributable to drug therapy; the role of the medication in improving symptoms is discussed in treatment reports including from April 2006, June 2006, and July 2006. The Board is prohibited from considering the ameliorative effects of medication when such effects are not contemplated by the rating criteria. See Jones v. Shinseki, 26 Vet. App. 56 (2012). Accordingly, any improvement shown as a result of his treatment will not be considered detrimental to his rating assignment except to any extent contemplated by the rating criteria.

Significantly, a May 2006 VA treatment report shows that the Veteran's etanercept is indicated when plaque psoriasis is "Moderate to Severe," and that the use of the medication was approved for the Veteran with attention to its importance in managing his skin disorder (and not only his psoriatic arthritis).

The September 2006 VA examination report states that less than 5 percent of total area and less than 5 percent of exposed area were observed with lesions at that time, but there is no indication that this observation took place during a flare-up and there is discussion of the extent of involvement typical during a more active phase as the disease would "come and go." During the Veteran's May 2011 Board hearing, he explained that he experienced "several spots that just don't go away," but also "some that appear and some that go away," indicating natural fluctuations in the observable extent of body area affected.

Furthermore, the Veteran was prescribed Enbrel and/or methotrexate at least intermittently (and perhaps significantly more often, perhaps constantly for significant periods) during all well-documented times during the period on appeal (with records suggesting nearly constant use from 2005 through at least the time of the May 2011 Board hearing, when the Veteran reported his prescribed self-administration of Enbrel injections). The Board takes judicial notice of the fact that publicly available medical information strongly suggests that both of these medications are systemic immunosuppressants typically administered by injection (Enbrel, a.k.a. "etanercept") and orally (methotrexate, a.k.a. "MTX"). Greater clarity regarding the extent, duration, and significance of these treatments is sought in the remand section below, but the Board observes that (at least) intermittent use of systemic immunosuppressants from the very beginning of the period on appeal would further support the Veteran's entitlement to an effective date for the 10 percent rating matching the beginning of the period on appeal.

The Board finds that an earlier effective date of July 13, 2004 (the effective date of the grant of service connection for the psoriasis skin disorder) is warranted for the award of a 10 percent rating for the psoriasis skin disorder.



ORDER

An effective date of July 13, 2004 for the assignment of a 10 percent rating for psoriasis and seborrheic dermatitis psoriasis and seborrheic dermatitis is granted, subject to the laws and regulations governing the payment of compensation benefits.


REMAND

The Veteran's psoriasis and seborrheic dermatitis is rated under Diagnostic Code 7816 pertaining specifically to psoriasis. The applicable rating criteria of this Diagnostic Code are discussed in detail in the section of this decision revising the effective date of the 10 percent rating recently assigned for the disability, above.

Higher ratings may be warranted for the Veteran's skin disability on appeal for all or parts of the 13 year rating period under consideration if (amongst other potential avenues) the skin disability required "systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during [a] 12-month period." 38 C.F.R. § 4.118, Diagnostic Code 7816.

The rating adjudications in this case prior to the issuance of this Board decision reflect that VA has not recognized any requirement of qualifying systemic therapy, but the Board's review at this time finds evidence that suggests otherwise. The September 2006 VA examination report notes that the Veteran "was placed on methotrexate three years ago and on Enbrel two years ago, and with the aid of these medications, his psoriatic lesions have regressed." The Board takes judicial notice of the fact that publicly available medical information strongly suggests that both of these medications are systemic immunosuppressants typically administered by injection (Enbrel, a.k.a. "etanercept") and orally (methotrexate, a.k.a. "MTX").

Contemporaneous evidence of record makes it clear that the Veteran was taking these medications for significant portions of the period on appeal to treat a combination of the Veteran's psoriatic arthritis (a separate service-connected disability related to psoriasis) and also the Veteran's psoriasis that is the focus of the current appeal. It is not entirely clear to the Board to what extent the full duration of the use of these medications was indicated by the skin disability alone (although it is clear that this extent is not zero) and to what extent use of these medications may have continued at times only for treatment of the distinct psoriatic arthritis symptoms.

A March 2005 private medical report shows that the Veteran was taking Enbrel administered twice per week, each week.

April, May, June, and July 2006 VA treatment reports indicate that the Veteran had, as of that time, recently started coming to VA to receive methotrexate and Enbrel ("etanercept") which he had been previously receiving through his private medical providers to treat his psoriatic pathologies, with good control of his psoriasis. The VA treatment reports describe that the Veteran had been taking the medications for the prior two years, while some of the reports indicate that the Enbrel was added more recently, in early to mid 2005. All indications are that the Veteran was taking the medications on a weekly (methotrexate) and biweekly (Enbrel) basis, with the exception of a short period immediately preceding the Veteran's initiation of treatment at VA in which the Veteran was unable to obtain Enbrel. The Veteran was also taking topical medications prescribed by dermatology in May 2006, but it is clear that the systemic medications were associated with the psoriasis skin treatment and not exclusively the psoriatic arthritis.

An April 2006 VA treatment report indicates that the Veteran's Enbrel ("etanercept") treatment was started approximately a year prior and "[b]oth his psoriasis and arthritis responded well to the etanercept." A May 2006 VA dermatology report further identifies Enbrel and methotrexate as pertinent to the dermatology treatment. A May 2006 VA treatment record indicates that Enbrel and methotrexate are indicated when plaque psoriasis (the skin disability) is moderate to severe; this report indicates that the addition of Enbrel ("etanercept") to the Veteran's methotrexate treatment in 2005 with a good response "to both his rash and arthritis," and VA then approved the Veteran for resuming the treatment with Enbrel ("etanercept") and methotrexate. A June 2006 VA treatment note comments that the Veteran's Enbrel ("etanercept") and methotrexate had "worked well for his psoriasis and arthritis." A July 2006 VA treatment note comments that the Veteran's "rash had improved significantly on enbrel...."

Private treatment reports from 2004 also indicate that the Veteran was taking methotrexate at that time.

It appears that for at least some significant portion of the period on appeal (beginning in July 2004), the Veteran was prescribed "systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more (potentially supporting a 30 percent rating) or even "constantly" (potentially supporting a 60 percent rating) in some of the years in the period on appeal. See 38 C.F.R. § 4.118, Diagnostic Code 7816.

The Board notes that the October 2015 VA fee-basis examination report discusses the Veteran's treatment with "MTX and Enbrel," and comments that he is "no longer tak[ing] Enbrel," without further detail. More detail regarding the Veteran's history of these treatments is needed to determine the appropriate level and duration of disability rating assignments appropriate in this case.

Additionally, the evidence of record indicates that the Enbrel and methotrexate were being prescribed to the Veteran on an ongoing basis by VA medical providers as of 2006, and the evidence of record indicates that at least the use of Enbrel has been discontinued at some point since. The Board notes that the Veteran's May 2011 testimony at his Board hearing described that he was self-administering prescribed Enbrel injections "every week," and described them as a systemic "immune-suppressant drug" treatment that he injected into his thigh. The Veteran also described that he had previously been prescribed "a combination of the Methotrexate and Enbrel," but "[a]fter a couple of years I got off of the Methotrexate and we just solely went with the Enbrel." The Board observes that the May 2011 hearing testimony largely focuses upon these systemic medications in the context of the Veteran's psoriatic arthritis symptoms, and noted that it was being prescribed by his VA rheumatologist."

The details and timing of significant changes in the administration of these medications is not clear from the evidence of record, in part because the claims-file does not contain all of the Veteran's VA treatment record from the years from 2006 to the present time. The pertinent outstanding VA medical records are constructively of record and may be essential to completing informed appellate review of this case, and those records must be obtained and added to the claims-file during the processing of this remand.

A new VA opinion informed by interview and examination of the Veteran shall furthermore have the opportunity to better inform appellate review of this claim by more adequately addressing and detailing the frequency, duration, and severity of outbreaks of the skin disease. Where the rating evaluation at issue is of such a disability that fluctuates in degree of disability, an examination of the disability during an active stage or during an outbreak is required. Ardison v. Brown, 6 Vet. App. 405 (1994); Bowers v. Derwinski, 2 Vet. App. 675 (1992). The frequency, duration, and severity of outbreaks of skin disease exacerbations must be addressed, and the skin disorder should be considered, whenever possible, at a time when it is most disabling. The Veteran's skin disability is indicated to fluctuate in degree of severity, and examination of the disability during an active stage or during an outbreak is required. See Ardison v. Brown, 6 Vet. App. 405 (1994); Bowers v. Derwinski, 2 Vet. App. 675 (1992). The scheduling of the new VA examination should include an attempt to conduct the examination during a period of flare-up of the skin disorder and, regardless of the success of such attempt, the VA examination report must present a detailed clinical history describing the manifestations during flare-ups.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should secure for the record copies of complete updated clinical records (any not already of record) of all VA and/or private treatment the Veteran has received for his skin disability on appeal since 2004. The Board notes that the most recent update of VA treatment records available for review in the claims-file is from November 2006. If the Veteran has received pertinent private treatment, the AOJ should ask the Veteran to provide the releases necessary for VA to secure the records of such treatment.

2. After the record is determined to be complete, the AOJ should schedule the Veteran for a VA examination to determine the severity of his service-connected psoriasis. The RO should make an attempt to schedule the VA skin examination such that it may be conducted when the Veteran's service-connected psoriasis is active. If such examination cannot be conducted during a period of flare-up of the skin disorder, the examiner must record a detailed clinical history describing the symptom manifestations during flare-ups. The examiner is asked to provide answers to the following:

(a) The examiner should report the measurement of the percentage of the entire body and the percentage of exposed areas of the body affected by the service-connected psoriasis, including identifying the extent of area affected during flare-ups.

(b) The examiner should please report whether systemic therapy such as corticosteroids or other immunosuppressive drugs is required and, if so, the total duration required over the past 12 months.

(c) The examiner is asked to please specifically confirm whether or not the Veteran's history of use of methotrexate and/or Enbrel (etanercept) constitutes "systemic therapy such as corticosteroids or other immunosuppressive drugs."

(d) Please identify (to the extent possible) the periods of time from July 2004 until the present during which treatment of the Veteran's skin disorder required "systemic therapy such as corticosteroids or other immunosuppressive drugs." Please include in the examination report all details of the Veteran's history of use of such systemic therapy featuring corticosteroids or other immunosuppressive drugs obtained from interview of the Veteran and from review of medical records. In particular, please identity the duration of any periods of time during which the Veteran's psoriasis skin disorder required treatment with such therapy "constantly," and any periods where the disorder required treatment with such therapy "for a total duration of six weeks or more" in a 12 month period. If there are any periods of use of "systemic therapy such as corticosteroids or other immunosuppressive drugs" during which such treatment was medically required only for the Veteran's psoriatic arthritis, and were clearly not required for treatment of his skin disorder, please identify those periods in this response.

(e) The examiner must indicate the effect of the Veteran's service-connected skin disability on his occupational and social functioning and his ordinary activities of daily life (including during flare-ups).

A rationale must be provided for all findings and conclusions reached. The examiner should identify and explain the medical basis for the opinion, identify the pertinent evidence of record, and identify any applicable medical treatises referenced. If an opinion sought cannot be offered without resort to mere speculation, the examiner must explain whether that is so because the facts presented are lacking (if so, identify the facts needed, but not shown); because the state of medical knowledge is inadequate to address the question; or because the examiner lacks the requisite training.

3. The AOJ should then readjudicate the claim of entitlement to an increased disability rating for psoriasis. If the benefit sought remains denied, the Veteran must be provided a supplemental statement of the case and an appropriate period of time for response.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs