Citation Nr: 1550125 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 11-08 720 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent for tinnitus. 

2. Entitlement to a compensable disability rating for left ear hearing loss.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

E.I. Velez, Counsel



INTRODUCTION

The Veteran served on active duty from August 1987 to November 1987 and from November 1988 to November 1991. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision of the Department of the Veteran Affairs (VA) Regional Office (RO) in Columbia, South Carolina.

In October 2014, the Board denied the issue of entitlement to an increased disability rating for tinnitus and remanded the issue of entitlement to an increased disability rating for left ear hearing loss. 

The Veteran appealed the denial of an increased disability rating for tinnitus to the U.S. Court of Appeals for Veterans Claims (Court). Pursuant to a Joint Motion for Remand (JMR) of August 2015, the Court remanded the portion of the Board's October 2014 decision which denied an increased disability rating for tinnitus. The case is now back at the Board for appellate review.

The issue of entitlement to a rating in excess of 10 percent for tinnitus is addressed in the Remand below. 



FINDING OF FACT

The most probative evidence indicates the Veteran's left ear hearing loss has been manifested by Level VII. As the right ear is not service connected, a Level I is assigned.



CONCLUSION OF LAW

The criteria for a compensable evaluation for left ear hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.85, Diagnostic Code 6100 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002)) redefined VA's duty to notify and assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2014). The RO provided the Veteran with VCAA-compliant notice by letter dated June 2010. The Veteran was provided all essential notice, had a meaningful opportunity to participate in the development of the claim being decided, and is not prejudiced by any technical notice deficiency along the way. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). 

Concerning the duty to assist, VA obtained service treatment records, post-service VA treatment records, and VA examination reports. Also, the VA examinations of June 2010 and December 2014 are adequate because, as discussed below, they were based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and because the examiner provided detail sufficient to allow the Board to make, a fully informed determination. See Barr v. Nicholson, 21, Vet. App. 03 (2007) (citing Ardion v. Brown, 6 Vet. App. 405, 407 (1994)). 

Therefore, VA has satisfied its duties to notify and assist, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 4.0 (1994).

Legal Criteria and Analysis

Disability ratings are determined by applying VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

While the Veteran's entire history is reviewed when assigning a disability rating, 38 C.F.R. § 4.1, where service connection already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). However, the Board must consider the application of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

On a claim for an original or an increased rating, the claimant is generally presumed to be seeking the maximum benefit allowed by law and regulation; thus, a claim remains in controversy where less than the maximum available benefit is awarded. AB v. Brown, 6 Vet. App. 35, 38 (1993). 

The Board has reviewed and considered all of the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that all of the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). When there is an approximate balance of evidence for and against an issue, all reasonable doubt will be resolved in the Veteran's favor. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102 ; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Left Ear Hearing Loss

The Veteran is seeking a compensable evaluation for left ear hearing loss. A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Evaluations of defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of a controlled speech discrimination test (Maryland CNC) together with the average hearing threshold level measured by puretone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz ). To evaluate the degree of disability from service-connected defective hearing, the rating schedule establishes 11 auditory hearing acuity levels designated from Level I, for essentially normal hearing acuity, through Level XI, for profound deafness. 38 C.F.R. §§ 4.85, Tables VI and VII, Diagnostic Code 6100 (2014). Disability ratings for hearing loss are derived from a mechanical application of the rating schedule to the numeric designations resulting from audiometric testing. See Lendenmann v. Principi, 3 Vet. App. 345 (1992).

The Board briefly notes that, although 38 C.F.R. §§ 4.86 provides an alternative method of evaluation for exceptional patterns of hearing impairment, the evidence in this case does not establish the requisite criteria. Thus, use of Table VIA in determining the Roman numeral designations for the Veteran's bilateral hearing loss is not appropriate, and only Table VI will be used. See 38 C.F.R. §§ 4.85, 4.86.

Service connection for right ear hearing loss has not been established at this time; therefore, because the evidence does not show complete deafness in the non-service-connected right ear, the right ear will be considered normal and assigned a Level I hearing acuity for rating purposes. See 38 C.F.R. § 4.85(f).

The Veteran has received two VA examinations during the claim period, neither of which document compensable left ear hearing loss. The audiogram conducted during his June 2010 VA examination showed pure tone thresholds of 10,15, 20 and 30 decibels in the left ear at 1000, 2000, 3000, and 4000 Hertz ("specified frequencies"). Average puretone threshold was 19 decibels in the left. Speech audiometry revealed speech recognition ability of 76 percent in the left ear. Applying the results from that examination to Table VII in 38 C.F.R. § 4.85 yields a finding of Level III hearing loss in the left ear, and, as noted above, Level I hearing acuity is assigned to the right ear because the evidence does not demonstrate deafness in the non-service-connected right ear. According to Table VII under Diagnostic Code 6100, a zero (0) percent disability rating is warranted for the level of hearing impairment demonstrated at the June 2010 audiology examination. 38 C.F.R. § 4.85.

The audiogram conducted in his December 2014 VA examination showed pure tone thresholds of 60, 70, 75, and 80 decibels in the left ear at 1000, 2000, 3000, and 4000 Hertz ("specified frequencies"). Average puretone threshold was 71 decibels in the left. Speech audiometry revealed speech recognition ability of 48 percent in the left ear. Applying the results from that examination to Table VII in 38 C.F.R. § 4.85 yields a finding of Level VIII hearing loss in the left ear, and, as noted above, Level I hearing acuity is assigned to the right ear because the evidence does not demonstrate deafness in the non-service-connected right ear. According to Table VII under Diagnostic Code 6100, a zero (0) percent disability rating is warranted for the level of hearing impairment demonstrated at the December 2014 audiology examination. 38 C.F.R. § 4.85.

In this case, the Veteran has reported the effects of his hearing loss on daily functioning. Specifically, the Veteran has difficulty hearing on the phone and having normal conversation. See June 2010 VA examination. In the July 2010 statement, he stated that his poor hearing led to arguments with his wife and some difficulties at work. This description of his hearing loss must be considered in conjunction with the clinical evidence of record, as well as the pertinent rating criteria. The VA examination reports of record include thorough hearing examinations. While the Veteran has reported difficulty with understanding speech, difficulty hearing phone conversation, and arguments with his wife, which he reports has impacted functioning, the percentage, bilaterally, of speech recognition reflects overall a high speech discrimination ability when both ears are considered. 

As such, the evidence of record supports the conclusion that the Veteran is not entitled to compensable compensation during any time within the increased rating period on appeal. For these reasons, the Board finds that an increased (or compensable) rating for left ear hearing loss is not warranted for any period on appeal. Because the preponderance of the evidence is against the appeal of a compensable rating for left ear hearing loss, the benefit of the doubt doctrine is not for application, and the claim must be denied. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3 , 4.7.

The Board has considered whether referral for extraschedular consideration is warranted. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2013); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating.

The Board finds that the symptomatology and impairment caused by the Veteran's service-connected left ear hearing loss are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. A VA audiology examination report must fully describe the functional effects caused by a hearing disability in addition to dictating objective test results. Martinak v. Nicholson, 21 Vet. App. 447 (2007). In this regard, the June 2010 VA examination report addressed the functional effects caused by the Veteran's left ear hearing loss disability, noting general difficulty hearing phone conversations and having normal conversations. The December 2014 VA examiner also noted that the Veteran had difficulty hearing out of his left ear. In a July 2010 statement, the Veteran reported having arguments with his wife and having problems hearing at work due to his left ear hearing loss. Although the effects of the hearing loss were noted to be significant, at the June 2010 VA examination, the record shows the Veteran continues to be employed. Moreover, he continues to be married. 

The schedular criteria are adequate to rate the Veteran's left ear hearing loss disability. The schedular rating criteria specifically provide for ratings based on all levels of hearing loss, including exceptional hearing patterns, which are not demonstrated in this case, and as measured by both audiology testing and speech recognition testing. The Veteran's complaints concern diminished auditory acuity and speech recognition. Diminished auditory acuity and speech recognition testing are the foundation of the schedular criteria. Moreover, the testing is to be performed without the use of hearing aids. See 38 C.F.R. § 4.85(a). The scores represent a rating made on the worst possible objective measure of performance. In short, the Veteran does not have any symptoms or impairment from the service-connected left ear hearing loss disability that are unusual or are different from those contemplated by the schedular rating criteria.

The decibel loss and speech discrimination ranges designated for each level of hearing impairment in Tables VI and VIA were chosen in relation to clinical findings of the impairment experienced by veterans with certain degrees and types of hearing disability. The regulatory history of 38 C.F.R. §§ 4.85 and 4.86 includes revisions, effective June 10, 1999. See 64 Fed. Reg. 25206 (May 11, 1999). In forming these revisions, VA sought the assistance of the Veteran's Health Administration (VHA) in developing criteria that contemplated situations in which a veteran's hearing loss was of such a type that speech discrimination tests may not reflect the severity of communicative functioning these veterans experienced or that was otherwise an extreme handicap in the presence of any environmental noise, even with the use of hearing aids. VHA had found through clinical studies of veterans with hearing loss that, when certain patterns of impairment are present, a speech discrimination test conducted in a quiet room with amplification of the sounds does not always reflect the extent of impairment experienced in the ordinary environment. The decibel threshold requirements for application of Table VIA were based on the findings and recommendations of VHA. The intended effect of the revision was to fairly and accurately assess the hearing disabilities of veterans as reflected in a real life industrial setting. 59 Fed. Reg. 17295 (April 12, 1994). Accordingly, the Board finds that functional impairment due to hearing loss that is compounded by background or environmental noise is a disability picture that is considered in the current schedular rating criteria; therefore, the Veteran's struggle to comprehend verbal conversations and other noises is a factor contemplated in the regulations and schedular rating criteria. 

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the symptoms reported by the Veteran are specifically contemplated by the criteria discussed above, including the effect on his daily life. In the absence of exceptional factors associated with the left ear hearing loss, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).


ORDER

A compensable rating for left ear hearing loss is denied.


REMAND

Regarding extraschedular consideration under 38 C.F.R. § 3.321(b)(1); generally speaking, evaluating a disability under either the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2015). Because the ratings are averages, it follows that an assigned rating may not completely account for each individual Veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. However, in exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations are inadequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009); see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) issued a decision, in which it rejected VA's interpretation that 38 C.F.R. 3.321(b)(1) only contemplates that referral for extraschedular consideration be made on an individual basis for each service-connected disability to determine if the disability picture rendered the schedular evaluation inadequate, and not on a collective basis. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014); 38 C.F.R. 3.321(b)(1) (2015). In that case, the Federal Circuit determined that extraschedular consideration required consideration of the "collective impact" of the Veteran's service-connected disabilities in assessing the disability picture and whether it rendered the schedular criteria inadequate such that referral to the Director of the VA Compensation and Pension Service for extraschedular consideration is warranted.

If either (1) the claimant's disability picture is adequately contemplated by the rating schedule or (2) there are no other "related factors," for example, frequent hospitalizations or marked interference with employment, then referral is not warranted and the other element need not be considered. Addressing the adequacy of the schedular rating criteria requires a comparison between the level of severity and symptomatology of the Veteran's service-connected disabilities with the criteria in the Rating Schedule. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule and the assigned schedular evaluation is, therefore, adequate, and no referral is required.

In the August 2015 JMR, the parties noted that in discussing extraschedular consideration, the Board did not consider the all of the symptomology felt by the Veteran to be attributable to his tinnitus in his July 2010 Statement in Support of Claim, including vertigo, missing information at work during teleconferences, getting into arguments, and impacted speech. 

On remand, the Veteran should be afforded a new examination to address all symptomatology and manifestations attributed to his tinnitus. In particular, the examiner indicate whether the Veteran's complaints of stress, anxiety, sleep impairment, vertigo, missing information at work during teleconferences, getting into arguments, and impacted speech are symptoms or manifestations of his service connected tinnitus. 

Inasmuch as the Veteran has reported symptomatology that he attributes to tinnitus that may not be contemplated under Diagnostic Code 5260, the case should be forwarded to the appropriate official for consideration of an extraschedular evaluation under 38 U.S.C.A. § 3.321(b)(1) to include consideration of the collective impact that the Veteran's tinnitus has with his service connected left ear hearing loss disability. 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for an examination to evaluate his tinnitus. All findings and conclusions should be supported with a complete rationale, which should reflect the examiner's consideration and analysis of both the medical and lay evidence of record. The claims file, to include any newly associated evidence, should be made available to the examiner and review of the file should be noted in the requested report.

The examiner should:

(a) Describe in detail any symptoms or manifestations attributed to the Veteran's tinnitus. 

In doing so, the examiner should indicates whether the Veteran's complaints of stress, anxiety, sleep impairment, vertigo, missing information at work during teleconferences, getting into arguments, and impacted speech are symptoms of the Veteran's service-connected tinnitus.

(b) In addition, the examiner should report on the current severity of the Veteran's tinnitus, to include a discussion of the frequency of any symptoms associated with the condition.
 
If the examiner cannot provide the requested opinions without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation.

2. Then, the RO should forward the claims file to the Director of the VA Compensation and Pension Service for extraschedular consideration, to include the collective impact of the Veteran's service-connected tinnitus and left ear hearing loss disability to determine whether a combined extraschedular rating is warranted under 38 C.F.R. § 3.321(b) in light of the Federal Circuit's decision in Johnson. 

3. If a determination remains adverse to the Veteran, the Veteran and his representative will be provided a Supplemental Statement of the Case, which includes a summary of all pertinent evidence and legal authority, as well as the reasons for the decision. The Veteran and his representative will be afforded a reasonable period in which to respond, and the record will then be returned to the Board for further appellate review, as appropriate.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs