http://www.va.gov/vetapp16/Files5/1639916.txt

Citation Nr: 1639916 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 10-24 847 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico

THE ISSUES

1. Entitlement to service connection for a right knee disorder.

2. Entitlement to service connection for residuals of a sexually transmitted disease.

3. Entitlement to service connection for a right shoulder disorder.

4. Entitlement to service connection for a lumbar spine disorder.

ATTORNEY FOR THE BOARD

J.N. Moats, Counsel

INTRODUCTION

The Veteran had active duty service from February 1957 to May 1966, including service in the Republic of Vietnam.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a March 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico that denied the Veteran's claims for service connection for a right knee condition, a sexually transmitted disease, a right shoulder condition, and low back pain.

The Board remanded these issues for further development in August 2014. Specifically, the Board directed the RO to translate documents, obtain VA clinical records from 1984 to 2000, obtain Social Security Administration (SSA) records, and afford the Veteran a VA examination for his low back disorder. The RO translated the documents and afforded the Veteran a VA examination. The RO also attempted to obtain the VA clinical records and SSA records; however, a negative response was received. The Veteran was informed of the RO's inability to obtain these records in an August 2015 letter. Thus, there has been substantial compliance with the prior Board remand directives. Stegall v. West, 11 Vet. App. 268 (1998). 

The issue of service connection for a skin disorder was also remanded; however, in a June 2016 rating decision, the Agency of Original Jurisdiction (AOJ) granted service connection for eczema, cutaneous T-Cell lymphoma, actinic keratosis and squamous cell carcinoma, claimed as skin condition; representing a full grant of the benefit sought on appeal. The Veteran appealed the initial rating assigned and the AOJ issued statement of the case in July 2016. However, to date, the Veteran has not submitted a substantive appeal and, in turn, this issue is not currently before the Board. 

The Board also remanded the issues of service connection for hypertension, circulatory problems, high cholesterol, gastroesophageal reflux disease, erectile dysfunction, prostate problems, kidney problems and posttraumatic stress disorder for issuance of a statement of the case. A statement of the case was issued in August 2015; however, the Veteran failed to submit a substantive appeal and, thus, these matters are no longer in appellate status. That same month, the AOJ also issued a statement of the case with respect to the issues of service connection for bilateral sensorineural hearing loss and tinnitus; however, again, the Veteran failed to submit a substantive appeal. 

The Board notes that the Veteran submitted an Appointment of Veterans Service Organization as Claimant's Representative (VA Form 21-22) appointing the Disabled American Veterans as his power of attorney (POA) in October 2000. The Veteran withdrew his POA in August 2012 and has not submitted a VA Form 21-22 appointing a new representative. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

In August 2016, the Veteran submitted a claim to reopen his claims for service connection for bilateral hearing loss and tinnitus. To date, the AOJ has not adjudicated these claims. As such, they are not currently before the Board and are referred back to the AOJ for appropriate action. 

FINDINGS OF FACT

1. A right knee disorder is not shown to be causally or etiologically related to any disease, injury, or incident in service.

2. At no time during the pendency of the claim does the Veteran have a current diagnosis of residuals of a sexually transmitted disease, and the record does not contain a recent diagnosis of disability prior to the Veteran's filing of a claim.

3. There is no competent evidence of any injuries, diseases or other incidents with respect to the right shoulder during service and the first evidence of a right shoulder disorder was many years after service. 

4. A low back disorder is not shown to be causally or etiologically related to any disease, injury, or incident in service

CONCLUSIONS OF LAW

1. The criteria for service connection for a right knee disorder have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

2. The criteria for a grant of service connection for residuals of a sexually transmitted disease have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

3. The criteria for service connection for a right shoulder disorder have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

4. The criteria for service connection for a low back disorder have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

II. Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

The Veteran has asserted that the provisions of 38 U.S.C.A. § 1154(b) are applicable in this case, which state, in pertinent part, that in any case where a Veteran is engaged in combat during active service, lay or other evidence of service incurrence of a combat related disease or injury will be considered sufficient proof of service connection if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence during service, and, to that end, VA shall resolve every reasonable doubt in favor of the Veteran. However, although documenting his service in Vietnam, review of the Veteran's DD 214 as well as his service personnel records do not show that he engaged in combat with the enemy. In this regard, these records do not show that the Veteran received any combat medal. Moreover, his military occupational specialty was a carpenter, which is not considered a combat occupation. As such, the provisions of 38 U.S.C.A. § 1154(b) are not applicable in this case. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Right Knee Disorder

The Veteran is seeking service connection for a right knee disorder. He has generally claimed that his right knee disorder is related to his service. He has also indicated that his right knee disorder is due to an accident with a baseball. 

Service treatment records showed that the Veteran suffered a bruise to the right leg while playing softball in May 1960. However, there was no mention of any specific injury to the knee and no chronic right knee disorder was diagnosed at that time. Importantly, although there was some sort of scar on the right knee and thigh observed, the Veteran's May 1966 service examination prior to discharge showed that the lower extremities were clinically evaluated as normal. There was no mention of a chronic right knee disorder. In his contemporaneous medical history, the Veteran expressly denied a trick or locked knee. 

The first post-service medical evidence concerning a right knee disorder is an August 2006 VA clinical record, over 40 years after the Veteran's discharge from service. At time, the Veteran reported for an initial evaluation at VA. He complained of right knee pain after trauma with baseball. However, it was noted that the Veteran practiced baseball and it was unclear what baseball incident to which he was referring. The assessment was right knee tibialis tendinitis. 

The Veteran was afforded a VA examination in July 2008. The claims file was reviewed. The examiner noted the incident in service of right leg bruise while playing softball. The examiner diagnosed right knee osteoarthritis patellofemoral syndrome. The examiner opined that the Veteran's right knee disorder was due to the aging process and the natural wear and tear of the joint. His symptoms were mild and he had no medical treatment for the right knee until 2006, 40 years after he completed his military service. The time gap between the alleged in-service traumas without documentation of the injuries and the mild symptoms make the current condition not related to his military service. 

The Board notes that the VA examiner considered the Veteran's record and medical history in the report. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Ardison v. Brown, 6 Vet. App. 405, 407 (1994). Additionally, the VA examiner provided an etiological opinion, complete with the rationale described above. Barr, supra. Moreover, the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Consequently, the Board assigns great probative value to the VA examiner's opinion.

Based on the medical evidence of record, the Board must find that, as there is no evidence of a chronic knee disorder in service or for many years after service, service connection is not warranted. Again, although there is one incident of a bruised right leg in service, service treatment records are completely silent with respect to any findings of a chronic right knee disorder. The Veteran's discharge examination also showed that the Veteran's lower extremities were clinically evaluated as normal. Moreover, the Veteran expressly denied any knee symptoms at discharge. Importantly, the July 2008 VA examiner found that the Veteran's current right knee disorder was not related to service and provided a detailed rationale for this opinion. There is no competent medical evidence of record to refute this opinion. 

Additionally, there is no evidence of arthritis within one year of discharge so the service incurrence of arthritis may not be presumed. In this regard, the first post service medical evidence of a chronic right knee disorder was in August 2006, over 40 years after discharge. As such, there is no competent medical evidence of pertinent symptoms since service. See Walker, cited above. 

The Board recognizes that lay assertions may serve to support a claim for service connection by demonstrating the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In the instant case, the Veteran is competent to report any in-service problems, as well as pertinent symptomatology since service. However, he is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the opinion of the Veteran is nonprobative evidence. See Davidson, supra; Jandreau, supra. 

Moreover, the Board finds the Veteran's current assertions of pertinent symptoms during and since service to not be credible. In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). In the instant case, the Board finds that such statements are not credible as they are outweighed by the remainder of the evidence of record and were made under circumstances indicating bias or interest. 

Importantly, service treatment records are silent with respect to a right knee disorder and the Veteran expressly denied any knee symptoms upon discharge in May 1966. See Curry v. Brown, 7 Vet. App. at 68 (contemporaneous evidence has greater probative value than history as reported by the claimant). The Board also finds it significant the post medical evidence of record is silent with respect to any symptoms for 40 years, which weighs against his statements that he had been experiencing such symptoms since his discharge. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (ascribing heightened credibility to statements made to clinicians for the purpose of treatment); see also Williams v. Gov. of Virgin Islands, 271 F.Supp.2d 696, 702 (V.I.2003) (noting that statements made for the purpose of diagnosis or treatment "are regarded as inherently reliable because of the recognition that one seeking medical treatment is keenly aware of the necessity for being truthful in order to secure proper care"). In sum, the Veteran's current statements, made in connection with his pending claim for VA benefits, that he has experienced continuous symptoms during and since service are inconsistent with the contemporaneous evidence. 

The Board is cognizant that, while the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a claimant's lay evidence, the lack of such records does not, in and of itself, render lay evidence not credible. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). The Board, however, finds in the instant case that the combination of the Veteran's express denial of any symptoms upon discharge, the lack of medical evidence for many years after service, and the fact that he was silent with respect to any symptoms related to service until he filed his current claim in 2008 to be persuasive evidence against his claim. Accordingly, while his contentions have been carefully considered, his statements are outweighed more the highly probative VA examination with opinion. 

In conclusion, based on the analysis above, the preponderance of the evidence is against the Veteran's claim for service connection for a right knee disorder. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b). 

Residuals of a Sexually Transmitted Disease

The Veteran is also seeking service connection for residuals of a sexually transmitted disease. Specifically, he has asserted that he has erectile dysfunction due to syphilis that he had in service. 

Service treatment records showed that the Veteran was treated for syphilis in May 1959. However, follow up records are silent with respect to any residuals. Importantly, the Veteran's May 1966 service examination prior to discharge is also silent with respect to any such residuals and the Veteran's genito-urinary systems was clinically evaluated as normal. Further, in his contemporaneous medical history, the Veteran also did not report any residuals. 
 
Post service VA treatment records show a history of syphilis and gonorrhea, but do not show any residuals of these diseases. 

The Veteran was afforded a VA examination in July 2008. The Veteran reported having syphilis and gonorrhea in service. The claims file was reviewed. The examiner noted that the claims file showed treatment for syphilis and condylomata acuminata, but was silent for gonorrhea diagnosis and treatment. Nevertheless, there were no residuals of gonorrhea on this examination. The examiner also found that there were no residuals noted in the claims file or at present time for syphilis. He concluded that a medical opinion was not necessary as laboratory tests showed no signs of active syphilis. 

The Board finds that the VA examination is adequate as it was based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and provide sufficient medical findings so as to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). In this regard, the Board notes that such examination failed to reveal a current diagnosis of any residuals of a sexually transmitted disease. Similarly, the preponderance of the evidence is against a finding that any residuals have been subsequently diagnosed. Therefore, there is no need for a nexus opinion regarding such issue. 

The Board acknowledges that the evidence of record shows that the Veteran was treated for syphilis in service; nevertheless, a preponderance of the competent medical evidence is against a finding that the Veteran currently suffers from any residuals of a sexually transmitted disease. In this regard, at the time of his May 1966 separation examination, the Veteran's genito-urinary system was clinically evaluated as normal at discharge with no residuals observed. Importantly, the July 2008 VA examination again found no residuals of syphilis or any other sexually transmitted disease. The United States Court of Appeals for Veterans Claims (Court) has indicated that in the absence of proof of a present disability, there can be no valid claim for service connection as Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

Nevertheless, the Board must still look to the evidence prior to the claim period to determine if the Veteran had a current diagnosis at the time he filed his claim in May 2008, or a recent disability of disability prior to the filing of such claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet.App. 289 (2013). The Veteran is competent to describe symptoms and to report a continuity of symptoms since service. However, the Veteran has not demonstrated any medical knowledge or expertise. Hence, again, he is a "layperson" in this regard, and not a medical expert. In the instant case, the question of whether the Veteran suffers from any residuals from any in-service sexually transmitted disease is a question too complex to be addressed by other than expert evidence. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). Again, after examining the Veteran and performing laboratory testing, the July 2008 VA examiner clearly found no residuals. As such, the Board must find that any lay assertions that the Veteran has any residuals from a sexually transmitted disease are outweighed by the findings of the VA examiner. Though the Veteran has claimed that he experiences erective dysfunction as a result of in service syphilis, he has provided no evidence that suggests such a relationship. In sum, there is no probative evidence showing that the Veteran has suffered from any residuals from a sexually transmitted disease, and the record does not contain a recent diagnosis of disability prior to the Veteran's filing of a claim.

In conclusion, the preponderance of the evidence is against service connection for residuals of a sexually transmitted disease. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b).

Right Shoulder Disorder

The Veteran has generally reported that he has a right shoulder disorder due to his service. However, he has not described any specific injury, diseases or other incidents with respect to the right shoulder. 

Service treatment records are also silent with respect to any injuries, diseases or other incidents with respect to the right shoulder. Importantly, the May 1966 service examination prior to discharge showed that the upper extremities were clinically evaluated as normal. In his contemporaneous medical history, the Veteran expressly denied a painful or trick shoulder. 

The first post-service evidence of any problems with respect to the right shoulder is an April 2007 VA clinical record that showed a complaint of shoulder pain. An X-ray showed degenerative changes of the right shoulder. 

The Veteran has not been afforded an examination in connection with this claim; however, the Board finds that such is not necessary in the instant case. In determining whether the duty to assist requires that a VA medical examination be provided or medical opinion obtained with respect to a Veteran's claim for benefits, there are four factors for consideration. 

These four factors are: (1) whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) whether there is evidence establishing that an event, injury, or disease occurred in service, or evidence establishing certain diseases manifesting during an applicable presumption period; (3) whether there is an indication that the disability or symptoms may be associated with the Veteran's service or with another service-connected disability; and (4) whether there otherwise is sufficient competent medical evidence of record to make a decision on the claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4). 

With respect to the third factor above, the Court has stated that this element establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and the Veteran's service. The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Specifically, the Veteran's service treatment records are silent as to complaints, findings, or diagnoses with respect to the right shoulder. Importantly, the Veteran has not specifically reported any injuries, diseases or other incidents in service to which his right shoulder disorder could be attributed. The Court has held that VA is not required to provide a medical examination when there is not credible evidence of an event, injury, or disease in service. See Bardwell v. Shinseki, 24 Vet. App. 36 (2010). Additionally, a mere conclusory generalized lay statement that service event or illness caused the claimant's current condition is insufficient to require the Secretary to provide an examination. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). Therefore, the Board finds that a VA examination and/or opinion is not necessary to decide this claim. 

Based on the evidence of record, the Board finds service connection for a right shoulder disorder is not warranted. Indeed, service treatment records are completely silent with respect to any findings of a right shoulder disorder. Importantly, the Veteran has not specifically reported any injuries, diseases or other incidents in service to which his right shoulder disorder could be attributed. Moreover, there is no evidence of arthritis within one year of service so the service incurrence of such cannot be presumed. Likewise, as the first medical evidence of a right shoulder disorder is dated 41 years after the Veteran's discharge, there is no competent medical evidence of pertinent symptoms since service. See Walker, cited above. 

Again, the Veteran is competent to report any in-service problems, as well as pertinent symptomatology since service. However, he is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the opinion of the Veteran is nonprobative evidence. See Davidson, supra; Jandreau, supra. 

Again, the Veteran is competent to report in-service shoulder problems, as well as pertinent symptomatology since service. However, the Board finds that the Veteran's current assertions of right shoulder problems in and since service to not be credible. Significantly, again, service treatment record are silent with respect to any right shoulder complaints. Importantly, the Veteran expressly denied a painful or trick shoulder at discharge. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (ascribing heightened credibility to statements made to clinicians for the purpose of treatment); See Williams v. Gov. of Virgin Islands, 271 F.Supp.2d 696, 702 (V.I.2003) (noting that statements made for the purpose of diagnosis or treatment "are regarded as inherently reliable because of the recognition that one seeking medical treatment is keenly aware of the necessity for being truthful in order to secure proper care"). The Board finds such evidence, made contemporaneous to service, to be more probative than his statements made in connection with his current claim for VA benefits. 

The Board also finds it significant that the Veteran has failed to describe any specific injuries, diseases or other incidents with respect to the right shoulder during service. Further, when he sought treatment at the VA for his right shoulder, he was again silent with respect to any shoulder problems in service. Rucker, supra; Williams, supra. Therefore, the Veteran's current statements, made in connection with his pending claim for VA benefits, are inconsistent with the contemporaneous evidence. Accordingly, while his contentions have been carefully considered, neither these contentions nor the clinical record establish an in-service injury.

Again, the Board is cognizant that, while the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a claimant's lay evidence, the lack of such records does not, in and of itself, render lay evidence not credible. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). The Board, however, finds in the instant case that the combination of the Veteran's specific denial of right shoulder symptoms during service, , and the fact that he was silent with respect to any shoulder problems until 41 years after service to be persuasive evidence against his claim. 

In sum, there is simply no competent or credible evidence showing that the Veteran suffered from any injury, disease or incident of the right shoulder in service. Accordingly, given the lack of any in-service incident, service connection must be denied. In conclusion, the Board finds that the preponderance of evidence is against the Veteran's claim for a right shoulder disorder. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b).

Low Back Disorder

The current appeal also includes the issue of service connection for a low back disorder. The Veteran generally contends that his current lumbar spine disorder was incurred during service. 

Service treatment records reflect the Veteran's complaints of a pulled muscle in the back in April 1966. However, his May 1966 discharge examination showed that the spine was clinically evaluated as normal. Moreover, in his contemporaneous medical history, the Veteran did not report any ongoing low back problems. 

Post-service VA clinical records beginning in October 2008 reflect the treatment for chronic low back pain. 

On remand, the Veteran was afforded a VA examination in September 2015. The claims file was reviewed. The examiner diagnosed lumbar degenerative disc disease with spondylosis and grade 1 anterolisthesis of L5 with respect to S1. There was no evidence on medical records that the Veteran required treatment for condition claimed at least within five years after being released from active service. The present lumbar conditions are compatible with degenerative change that is an expected change related to the normal aging process, especially in patients over 40 years. Lumbar degenerative disc disease with spondylosis and grade 1 anterolisthesis of L5 with respect to S1 are less likely than not caused by or result of military service, lumbar spine disorder during service, or the April 1966 pulled muscle. The examiner continued that the pulled muscle in the back is also known as lumbar strain, which was an acute and transitory condition that improved with proper treatment given. No evidence on medical records or further treatment for condition claimed at least within five years after being released from active service. 

The examiner further observed that there is no objective evidence of lumbar spondylosis on medical records to support that condition manifested within one year of service. The examiner continued that it was worth mentioning that the Veteran was diagnosed with osteoarthritis in the wrists, shoulders, knees, ankles, elbows and toes by a three phase bone scan done in September 2010, which means that osteoarthritis in this case is most like caused by or result of normal aging process. 

The Board notes that the VA examiner considered the Veteran's record and medical history in the report. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Ardison v. Brown, 6 Vet. App. 405, 407 (1994). Additionally, the VA examiner provided an etiological opinion, complete with the rationale described above. Barr, supra. Moreover, the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Consequently, the Board assigns great probative value to the VA examiner's opinion.

Based on the medical evidence of record, the Board must find that, as there is no evidence of a chronic low back disorder in service or for many years after service, service connection is not warranted. Again, although there is one incident of a pulled muscle in service, service treatment records are completely silent with respect to any findings of a chronic low back disorder. Importantly, the VA examiner described the pulled muscle as acute and transitory. The Veteran's discharge examination also showed that the Veteran's spine was clinically evaluated as normal. Moreover, the Veteran did not report any back symptoms at discharge. Importantly, the September 2015 VA examiner found that the Veteran's current low back disorder was not related to service and provided a detailed rationale for this opinion. There is no competent medical evidence of record to refute this opinion. 

Additionally, there is no evidence of arthritis within one year of discharge so the service incurrence of arthritis may not be presumed. In this regard, the first post service medical evidence any back symptoms was in October 2008, over 42 years after discharge. As such, there is no competent medical evidence of pertinent symptoms since service. See Walker, cited above. 

Again, the Veteran is competent to report any in-service problems, as well as pertinent symptomatology since service. However, he is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the opinion of the Veteran is nonprobative evidence. See Davidson, supra; Jandreau, supra. 

Moreover, the Board finds the Veteran's current assertions of pertinent symptoms during and since service to not be credible as they are outweighed by the remainder of the evidence of record and were made under circumstances indicating bias or interest. Importantly, the Veteran did not report any back symptoms upon discharge in May 1966. See Curry v. Brown, 7 Vet. App. at 68 (contemporaneous evidence has greater probative value than history as reported by the claimant). The Board also finds it significant the post medical evidence of record is silent with respect to any symptoms for 42 years, which weighs against his statements that he had been experiencing such symptoms since his discharge. Likewise, when he sought treatment at the VA for his back, he was again silent with respect to any back problems in service. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (ascribing heightened credibility to statements made to clinicians for the purpose of treatment); see also Williams v. Gov. of Virgin Islands, 271 F.Supp.2d 696, 702 (V.I.2003) (noting that statements made for the purpose of diagnosis or treatment "are regarded as inherently reliable because of the recognition that one seeking medical treatment is keenly aware of the necessity for being truthful in order to secure proper care"). In sum, the Veteran's current statements, made in connection with his pending claim for VA benefits, that he has experienced continuous symptoms during and since service are inconsistent with the contemporaneous evidence. 

The Board is cognizant that, while the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a claimant's lay evidence, the lack of such records does not, in and of itself, render lay evidence not credible. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). The Board, however, finds in the instant case that the combination of the Veteran's express denial of any symptoms upon discharge, the lack of medical evidence for many years after service, and the fact that he was silent with respect to any symptoms related to service until he filed his current claim in 2008 to be persuasive evidence against his claim. Accordingly, while his contentions have been carefully considered, his statements are outweighed more the highly probative VA examination with opinion. 

In conclusion, based on the analysis above, the preponderance of the evidence is against the Veteran's claim for service connection for a low back disorder. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b). 

ORDER

Service connection for a right knee disorder is denied.

Service connection for residuals of a sexually transmitted disease is denied.

Service connection for a right shoulder disorder is denied.

Service connection for a low back disorder is denied.

____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs